TRACY, ADMX., ET AL., APPELLEES, *v.* MERRELL DOW PHARMACEUTICALS, INC.
ET AL., APPELLANTS.

[Cite as Tracy *v.* Merrell Dow Pharmaceuticals, Inc. (1991),
58 Ohio St. 3d 147.]

(No. 89-2138—Submitted December 12, 1990—Decided March 27, 1991.)

*Nurenberg, Plevin, Heller & Mc-Carthy Co., L.P.A., Thomas Mester, Richard C. Alkire* and *Joel Levin,* for appellees.

*Reminger & Reminger Co., L.P.A., Craig A. Marvinney* and *Gary H. Goldwasser,* for appellants.

*Arter & Hadden, R. Crawford Morris, George Gore* and *Irene C. Keyse-Walker,* urging reversal for *amicus curiae,* Pharmaceutical Manufacturers Association.

*Rohrbacher, Nicholson & Light, David J. Rohrbacher* and *Barbara A. Braun Hafner,* urging reversal for *amicus curiae,* Sandoz Pharmaceuticals Corporation.

H. BROWN, J. In this civil action alleging medical malpractice and products liability, we consider two issues: (1) whether a jury instruction on the learned intermediary doctrine was appropriate with respect to an investigational drug, and (2) whether the trial court abused its discretion with respect to alleged discovery rule violations. For the reasons which follow we reverse the court of appeals and reinstate the jury verdict.

I

Learned Intermediary Doctrine

In *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 322, 4 O.O. 3d 466, 469, 364 N.E. 2d 267, 271, this court adopted the Restatement of the Law 2d, Torts (1965), Section 402A. Comment *k* to Section 402A con-

templates that a drug manufacturer will not be held strictly liable for injuries caused by an unavoidably dangerous drug, such as prescription drugs, if the warning is adequate.

The duty to warn depends, in the case law that has developed, upon the drug manufacturer's relationship to the user. Where a prescription drug has been prescribed for a patient by the patient's physician, the manufacturer has been held to discharge its duty to warn if the manufacturer adequately warns the physician. *Reyes* v. *Wyeth Laboratories* (C.A.5, 1974), 498 F. 2d 1264, 1276; *Basko* v. *Sterling Drugs, Inc.* (C.A.2, 1969), 416 F. 2d 417, 426; *Williams* v. *Lederle Laboratories* (S.D. Ohio 1984), 591 F. Supp. 381, 388; *McKee* v. *Moore* (Okla. 1982), 648 P. 2d 21, 24; *Terhune* v. *A.H. Robins Co.* (1978), 90 Wash. 2d 9, 13, 577 P. 2d 975, 977.

The rationale behind these holdings is that the physician stands between the manufacturer and the patient as a learned intermediary. The physician has the duty to know the patient's condition as well as the qualities and characteristics of the drugs or products to be prescribed for the patient's use. The physician is in the best position, therefore, to balance the needs of patients against the risks and benefits of a particular drug or therapy, and then to supervise its use. *McKee, supra; Terhune, supra,* at 978.

This shift in the duty to warn has been called the learned intermediary doctrine. In Ohio, we adopted the learned intermediary doctrine in *Seley* v. *G.D. Searle & Co.* (1981), 67 Ohio St. 2d 192, 21 O.O. 3d 121, 423 N.E. 2d 831. The learned intermediary doctrine achieves a proper allocation of responsibility since not all patients are alike and it is the physician who best knows the patient.

The learned intermediary doctrine

does not relieve the manufacturer of liability to the ultimate user for an inadequate or misleading warning; it only provides that the warning reaches the ultimate user through the learned intermediary. *Alm* v. *Aluminum Co. of America* (Tex. 1986), 717 S.W. 2d 588, 592; *McEwen* v. *Ortho Pharmaceutical Corp.* (1974), 270 Ore. 375, 386-387, 528 P. 2d 522, 529. If the product is properly labeled with the appropriate warnings and instructions to fully inform the physician (a learned intermediary) of the risks involved and the procedures for use, the manufacturer may reasonably assume that the physician will exercise his informed judgment in the patient's best interests. *McKee, supra; Terhune, supra.*

The issue presented to us in this case turns upon the relationship between Merrell Dow, Dr. Epstein and the plaintiff's decedent, Tracy. Was there a physician-patient relationship between Dr. Epstein and Tracy? Merrell Dow claims there was and that its duty to warn was satisfied (relying on the learned intermediary doctrine) by giving an adequate warning to Dr. Epstein. The plaintiffs-appellees claim that Dr. Epstein was acting as an agent of Merrell Dow rather than as a physician to Tracy, that the learned intermediary doctrine does not apply and that Merrell Dow owed a duty to warn Tracy directly.

To resolve the dispute, we must examine the nature of the physician-patient relationship. See *Osburn* v. *Anchor Laboratories, Inc.* (C.A.5, 1987), 825 F. 2d 908; see, generally, *Alm, supra,* at 491.

The physician-patient relationship arises out of an express or implied contract which imposes on the physician an obligation to utilize the requisite degree of care and skill during the course of the relationship. *Amer* v. *Akron City Hosp.* (1976), 47 Ohio St.

2d 85, 1 O.O. 3d 51, 351 N.E. 2d 479; *Bowers* v. *Santee* (1919), 99 Ohio St. 361, 124 N.E. 238 (overruled on other grounds [1983], 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438). The relationship is a consensual one and is created when the physician performs professional services which another person accepts for the purpose of medical treatment. *United Calendar Mfg. Corp.* v. *Huang* (1983), 94 App. Div. 2d 176, 179, 463 N.Y. Supp. 2d 497, 500.

The physician-patient relationship is a fiduciary one based on trust and confidence and obligating the physician to exercise good faith. *Black* v. *Littlejohn* (1985), 312 N.C. 626, 325 S.E. 2d 469; *Hales* v. *Pittman* (1978), 118 Ariz. 305, 576 P. 2d 493; *Missouri, ex rel. McCloud,* v. *Seier* (Mo. 1978), 567 S.W. 2d 127. As a part of this relationship, both parties envision that the patient will rely on the judgment and expertise of the physician. The relationship is predicated on the proposition that the patient seeks out and obtains the physician's services because the physician possesses special knowledge and skill in diagnosing and treating diseases and injuries which the patient lacks. *Black, supra.*

We are persuaded that the evidence of record supports the finding that the relationship between Dr. Epstein and Tracy was that of physician and patient.

Dr. Epstein determined Tracy's suitability for the Nicorette program. He performed a physical examination on Tracy and elicited Tracy's medical history. He directed Tracy to call, night or day, if Tracy had questions or concerns. Dr. Epstein saw Tracy in the hospital after he was admitted on September 15, 1983. Dr. Epstein retained the right to remove Tracy from the Nicorette study if, in his medical judgment, he felt the circumstances

warranted it. Dr. Epstein undertook the responsibility to balance the risks in dispensing Nicorette to Tracy.

Although Merrell Dow paid Dr. Epstein $15 for each participant in the Nicorette study program, the evidence does not support a finding that Dr. Epstein was an employee of Merrell Dow or that Dr. Epstein was acting under the control of Merrell Dow rather than as a physician exercising his independent judgment. Dr. Epstein was board certified in internal medicine and pulmonary medicine and he treated private patients, particularly those with lung disease. Merrell Dow did not control Dr. Epstein's judgment, duties and responsibilities as he used Nicorette in the treatment of patients.

Accordingly, we find that Dr. Epstein was acting as an independent physician in dispensing Nicorette to Tracy, that he was a learned intermediary and that the trial court correctly instructed the jury on the learned intermediary doctrine.

As an alternate argument, appellees urge that the learned intermediary doctrine should not apply where the drug at issue is being dispensed as part of an investigational study conducted for FDA approval. Where the drug is still under investigation, appellees contend, the manufacturer should be required to warn the ultimate user directly. We disagree.

The rationale which supports the learned intermediary doctrine is grounded upon the nature of the relationship between the physician and the patient. Typically, prescription drugs (whether FDA approved or in the investigational study phase) do not come to the patient in retail containers with full warning enclosures. Whether the drug is under investigation or FDA approved, it is the physician who selects it as appropriate for the patient. It is the physician who has the contact and relationship with the patient.

We have found no cases distinguishing between investigational drugs and FDA-approved drugs when applying the learned intermediary rule. Accord *Gaston* v. *Hunter* (App. 1978), 121 Ariz. 33, 46-47, 588 P. 2d 326, 339-340. In several cases courts have held that the learned intermediary rule did not apply where the prescription drug was not dispensed in the normal manner. In each of these cases the court made a factual determination that the drug was dispensed without a physician making an individualized balancing of the risk involved to the particular patient. *Williams, supra,* at 388-389. See, *e.g., Givens* v. *Lederle* (C.A.5, 1977), 556 F. 2d 1341, 1345 (vaccine administered in a manner similar to that in a public health center); *Reyes, supra,* at 1275-1278 (polio vaccine administered by public health nurse); *Davis* v. *Wyeth Laboratories, Inc.* (C.A.9, 1968), 399 F. 2d 121, 131 (vaccine dispensed through mass immunization program). The considerations which generated those holdings are not present here. The record before us demonstrates that Dr. Epstein had the responsibility to make an individualized balancing of the risks in dispensing Nicorette to Tracy.

The use of investigational drugs may, of course, require greater warning and more physician supervision, but the status of the drug with the FDA does not alter the relationship between drug manufacturer, physician and patient.

## II

### Discovery Issues

Appellees contend that the trial court erred with respect to two discovery issues: (1) the trial court abused its discretion when it permitted the

defendants to introduce expert testimony which went beyond the scope of, and was inconsistent with, pretrial reports summarizing the opinions of those experts, and (2) the trial court abused its discretion when it overruled appellees' motion for a mistrial when Merrell Dow failed to produce certain requested documents prior to trial.[1] Both discovery issues require us to decide whether the trial court abused its discretion.

Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Berk* v. *Matthews* (1990), 53 Ohio St. 3d 161, 169, 559 N.E. 2d 1301, 1308; *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149; *Steiner* v. *Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E. 2d 855.

A reviewing court may not substitute its judgment for that of the trial court absent an abuse of discretion. *Berk, supra; Holcomb* v. *Holcomb* (1989), 44 Ohio St. 3d 128, 131, 541 N.E. 2d 597, 599; *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, 94, 518 N.E. 2d 1197, 1199.

With this standard in mind we turn first to appellees' claim that the trial court should not have permitted testimony at variance with the pretrial reports. Appellees argue that appellants' failure to supplement their experts' pretrial reports was a violation of Civ. R. 26(E)(1)(b) and former Loc. R. 21[2]; that they were subjected

---

[1] As to the first discovery issue, appellees argue that the court of appeals correctly reversed the trial court. As to the second discovery issue, appellees did not file a cross-appeal from the court of appeals' adverse judgment. However, it is properly before us pursuant to R.C. 2505.22, which provides:

"In connection with an appeal of a final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part. The time within which assignments of error by an appellee may be filed shall be fixed by rule of court."

See, also, *Morgan* v. *Cincinnati* (1986), 25 Ohio St. 3d 285, 290, 25 OBR 337, 341, 496 N.E. 2d 468, 473.

[2] Civ. R. 26(E) provides in pertinent part:

"Supplementation of Responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify."

Former Loc. R. 21, Parts I(B) and (C), of the Court of Common Pleas of Cuyahoga County, General Division (amended effective July 1, 1988) provides:

"(B) The Pretrial Statements will recite a brief description of the case and the injuries involved, will list item by item, the ascertainable damages such as medical expenses, lost earnings, property damage, etc., will indicate the status of depositions and physical examinations, and reflect the lowest demand and highest offer. Since Ohio Civil Rule 16 authorizes the Court to require counsel to exchange the reports of medical and expert witnesses expected to be called by each party, each counsel shall exchange with all other counsel the written reports of medical and expert witnesses he expects to testify and the Pretrial Statements shall indicate compliance with this provision. Should a party intend to call an expert witness and has not procured a written report from said witnesses, he shall

to a "trial by ambush," depriving them of effective cross-examination, and precluding them from presenting evidence to refute the experts' previously undisclosed opinions.

Specifically, the appellees claim the following irregularities. Dr. Domino testified about K phosphate therapy, which was never addressed in his pretrial report. Dr. Diamond testified about alcohol's effect on the ability to absorb nicotine from Nicorette, which was never addressed in his pretrial report. Dr. Hanson testified about alcohol or withdrawal from alcohol as the cause of Tracy's seizure, which was not addressed in his pretrial report. Dr. Sachs's pretrial report said that Tracy's death was due to alcohol-induced cardiomyopathy. At trial he stated that the cause of death was pulmonary edema and challenged the validity of portable x-rays taken of Tracy's heart in September 1983. He testified that he had received additional information after the report was made and had re-evaluated pathological slides after the report.

We do not find that appellees were misled by the pretrial summaries in any relevant and prejudicial way. There was no deviation with regard to the essential issue in the trial: whether Nicorette was the cause of Tracy's death.

Pretrial reports are not intended as a substitute for the taking of depositions. The appellees, though provided with the summaries and the names of the expert witnesses, chose not to depose those witnesses. While the pretrial reports could have been more complete and while Dr. Sachs did alter his opinion on the precise cause of death (not his opinion that the cause was not Nicorette), these variances do not render the rulings by the trial judge an abuse of discretion.

We turn next to appellees' contention that the trial court should have granted a mistrial based upon Merrell Dow's failure to produce certain documents requested prior to trial. The disputed documents are ones that Merrell Dow generated between 1984 and 1987 after Larry Tracy's death.

Appellees first served Merrell Dow with a request for the production of documents two years before trial. Merrell Dow responded to some of the requests, but objected to others on the grounds that documents not limited in time to a date prior to Larry Tracy's death would not be relevant. Appellees, upon receipt of this objection, did not file a motion to compel discovery.

A little over a year before trial, appellees served Merrell Dow with a second request for the production of documents. While Merrell Dow failed to respond in writing to appellees' request as required, its counsel did respond orally by stating that the requested documents fell within the scope of objections raised in response to appellees' first request. Again, appellees did not file a motion to compel discovery.

Appellees took no further action until a week before trial when they filed a subpoena duces tecum directed

---

so indicate such fact in his pretrial statement stating the name and address of the expert and the subject of his expertise together with the reason for his non-receipt of such report.

"(C) Expert witnesses whose reports have not been furnished to opposing counsel prior to a pretrial held within sixty (60) days before trial, will not be permitted to testify at the trial, except where a party has not received a written report from such expert witness but has fully complied with Item (B) hereof."

to several current or former Merrell Dow employees. A few days later Merrell Dow moved to quash two of the subpoenas. On the first day of trial the court ordered the parties to resolve the dispute themselves and appellees raised no objection to this procedure. Merrell Dow produced the disputed documents in piecemeal fashion over the course of the first week of trial.

On the sixth day of trial, after appellees' experts had testified, appellees moved for a mistrial which the trial court denied. Appellees later renewed their motion in writing and attached affidavits of two of their experts stating that their testimony would have been significantly affected if they had reviewed the documents. The trial court again denied the motion.

We find no abuse of discretion. During the course of discovery appellees could have filed a motion to compel discovery or sought sanctions for Merrell Dow's failure to file a written response to their second request. A ruling would have been made and the issue resolved in timely fashion. At trial, appellees could have asked for a short continuance in order to review the newly produced documents or for leave to recall their experts. Finally, the record reveals that appellees obtained a substantial portion of the disputed records through inquiries in 1985 and 1986 to the United States Food and Drug Administration pursuant to the Freedom of Information Act. The record simply does not support a finding that the trial court abused its discretion when it denied a mistrial.

### Conclusion

For the foregoing reasons, we reverse the court of appeals and reinstate the jury verdict in favor of the defendants-appellants.

*Judgment reversed.*

MOYER, C.J., HOLMES, WRIGHT and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur in judgment only.