OPINION
Plaintiff-appellant, J. D. Wright, appeals from an order of the Belmont County Court of Common Pleas overruling appellant's motion for a new trial. This case arose from a personal injury action brought by appellant against defendant-appellee, Charles S. Kurth.
On August 20, 1993, an automobile accident occurred involving appellant and appellee. The record indicates that appellee was exiting from Interstate 70, traveling approximately thirty-five miles per hour, when he lost control of his vehicle and collided with the rear of appellant's vehicle. (Tr. 16-18) According to appellant, his wife was driving the vehicle while he was the passenger. (Tr. 33-34) After the accident appellant was able to walk to a gas station to call the police and return to the scene to await their response. (Tr. 34) Appellant's wife was transported by ambulance to a nearby hospital, while appellant stayed at the scene to finish filing the police report. (Tr. 34-35). Subsequently, appellant drove himself to the hospital also to seek treatment. (Tr. 35) Appellant was treated and released, x-rays showing no broken bones, and instructed to contact his attending physician Dr. Romano, for further treatment. (Tr. 36). Appellant's final bill for his emergency room visit totaled $416.50. Id.
Approximately one year and five months after the accident, in January of 1995, appellant eventually received medical treatment from Dr. Bashline, a chiropractor. (Tr. 37, 64) Prior to contacting Dr. Bashline, appellant had futilely sought treatment from a Dr. Romano and Dr. Dario, who had both refused to treat him. (Tr. 54-55). Appellant alleges that he was experiencing residual injuries as a direct result of the August 20 accident. (Tr. 38). Appellant complained of headaches, neck and right back pain, in addition to re-injuring his back on the left side. Id.
Appellant was under Dr. Bashline's care from January 16, 1995 until April 3, 1997. (Tr. 41-42). The total expense for such visits amounted to $9,536.89. Also during such time appellant was referred to Dr. Chattha for further diagnostic testing, incurring additional medical expenses, totaling $3,569.00. (Tr. 43-44). Appellant's medical bills totaled $13,522.39, at time of trial. (Tr. 47).
The record further illustrates that appellant has a history of prior back, neck, and other injuries substantially similar to those sustained in the August 20, 1993 accident. In 1978, appellant was placed on permanent disability for a work-related injury to his right knee, which resulted in three surgeries. (Tr. 24). In 1995, appellant was involved in an accident as a pedestrian. (Tr. 51-52). Also, in March of 1990, appellant was involved in a car accident. (Tr. 52). However, according to appellant, he did not suffer any permanent injuries. (Tr. 28). Appellant was treated for such accident by a Dr. Bently for injuries to his neck and back. Id. In March of 1991, appellant was rear-ended, causing substantial injury to his neck and left side of his back, which caused headaches. (Tr. 29). Appellant settled the lawsuit resulting from the March 1990 accident, but the lawsuit over the March, 1991 accident is still pending. (Tr. 52-55). Subsequently, appellant was treated by Dr. Romano, for the March 1991 accident, who sent him for physical therapy under Mark Macri. (Tr. 29). This therapy continued until approximately eleven or twelve days prior to the August 20, 1993 accident. Id.
Furthermore, on August 16, 1993, Mr. Macri recorded that appellant had slipped while he was fishing on August 15, thereby exacerbating his prior injuries. (Tr. 68) Mr. Macri noted that the slip had caused some temporary discomfort and restricted appellant from any forward and rightside bending movements. Id.
On August 16, 1995, appellant commenced the present action seeking damages in the amount of $25,000. After numerous delays, continuances, motions, and depositions, the matter proceeded to trial on April 10, 1997. The jury finally reached a verdict on April 14, 1997, awarding the appellant $416.50. This verdict was then accepted by the trial court per its judgment entry dated April 22, 1997.
However, on April 30, 1997, appellant, unsatisfied with the outcome, filed a motion to vacate and set aside the judgment and final order, due to the jury's award of inadequate damages appearing to be given under the influence of prejudice (Civ.R. 59[A][4]) and a judgment not sustained by the weight of the evidence (Civ.R. 59[A][6]).
On June 13, 1997, the trial court rendered its decision, in writing, denying appellant's motion due to lack of evidence illustrating the jury was motivated by prejudice or passion or bias, in addition to a lack of evidence that the jury disregarded the weight of the evidence or any principle of law in making its award of damages.
On July 10, 1997, appellant timely appealed the trial court's final order.
In his sole assignment of error, appellant alleges that:
 "THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFF'S MOTION FOR A NEW TRIAL."
Appellant bases his appeal upon Civ.R. 59(A)(4) and (6). To prevail on a motion for a new trial brought under Civ.R. 59(A)(4), the movant must show that excessive or inadequate damages appear to have been given under the influence of passion or prejudice. Under a motion for a new trial under Civ.R. 59(A)(6), the movant must illustrate that the judgment is not sustained by the weight of the evidence. "The granting of a motion for a new trial on either ground rests in the sound discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion." Pena v. NortheastOhio Emergency Affiliates, Inc. (1995), 108 Ohio App.3d 96, 103. See also, Pearson v. Wasell (Dec. 16, 1998) Columbiana App. No. 96-CO-73, unreported; Fricano v. McLaughlin (July 2, 1998), Columbiana App. No. 95-C-8, unreported. The Ohio Supreme Court has stated that an "abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." Tracy v.Merrell-Dow Pharmaceutical, Inc. (1991), 58 Ohio St.3d 147, 152.
 "An appellate court reviewing whether a trial court abused its discretion in ruling on a motion for a new trial pursuant to Civ.R. 59(A)(4) must consider (1) the amount of the verdict, and (2) whether the jury considered improper evidence, improper argument by counsel, or other inappropriate conduct which had an influence on the jury. * * * To support a finding of passion or prejudice, it must be demonstrated that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities. * * * The mere size of the verdict is insufficient to establish proof of passion or prejudice." (Citations omitted.) Pena, supra, at 104
 "* * * Generally, a new trial should be granted pursuant to Civ.R. 59(A)(6) where it appears that the jury awarded inadequate damages because it failed to consider an element of damages established by uncontroverted expert testimony [or where the jury's verdict is not supported by some competent, substantial, and credible evidence]." Dillon v. Bundy (1992), 72 Ohio App.3d 767, 773-774, citing Baum v. Augenstein
(1983), 10 Ohio App.3d 106, 107-108; accord, Toledo Rys Light Co. v. Mason (1910), 81 Ohio St. 463,
Such expert testimony must go to the extent and nature of the injury complained of, to illustrate that it was a direct result of or proximately caused by the tortfeasor's negligent conduct, thus allowing the jury to determine the amount of damages to award for that specific injury. See Baum, supra.
In the present case, it is undisputed that appellee caused the automobile accident on August 20, 1993, which resulted in appellant seeking emergency medical treatment. Accordingly, the remaining issues to be resolved concern proximate cause and damages. Therefore, the jury need only determine whether appellant's injuries were a direct result of appellee's negligent conduct and the appropriate award for damages.
Appellant argues that the damage award of $416.50, the amount of his emergency room visit, was against the manifest weight of the evidence. Appellant contends that the jury failed to properly compensate him for his pain and suffering, along with his other related damages that allegedly resulted from said accident. Appellant further maintains that his doctors testified to the extent and impact of his present injuries and their potential effect upon his health in the future.
In contrast, appellee contends that appellant failed to illustrate a direct causal connection between the accident and his alleged injuries or any future complications resulting therefrom. Appellee maintains that appellant's failure to establish this connection precludes awarding him the full amount of his requested damages. Appellee asserts that the jury correctly determined that it was appellant's prior accidents and work-related injuries for which he sought treatment and not as a result of the accident.
The evidence offered in the present case does not unequivocally establish a direct link between appellant's injuries and the accident. Baum, supra. On the contrary, appellant by his own admission stated that he failed to seek any substantial treatment, other than the emergency room visit, for his alleged injuries until approximately seventeen months after the accident. (Tr. 36-37). The record also shows that appellant was able to not only walk to a phone immediately after the accident, but able to stay on the scene awaiting the police before driving himself to and from the emergency room. (Tr. 33-36). Appellant, along with his doctors, further testified as to his previous auto, pedestrian, and work-related accidents for which he sought prior medical treatment. Also, the record shows that appellant had been seeking such treatment up until approximately eleven days prior to the accident. (Tr. 29). It should be further noted that appellant's physical therapist recorded that appellant, four days before the accident, had fallen thereby exacerbating the pre-existing injury for which he had been seeking treatment. (Tr. 68). Moreover, appellant's medical history regarding such injuries and treatment was shown to be substantially similar, if not identical, to the alleged injuries and treatment for which appellant is presently seeking compensation.
Although appellant did offer medical testimony in an attempt to establish a direct causal connection between the accident and his alleged injuries, it is still an issue for the jury. Baum, supra.
Accordingly, this court has held that it is unwilling to "invade the province of the jury in determining the weight to be afforded opinion evidence rendered by an expert. It is the duty of a jury to determine whether or not the facts upon which an expert opinion is based have been proven by the greater weight of the evidence." Pearson, supra, at 8; citing to Camden v. Miller
(1986), 34 Ohio App.3d 86.
The record demonstrates that the jury had at its disposal, competent, credible evidence to determine that appellant's present injuries and the medical treatment, sought seventeen months after the accident, were not a direct result of the accident itself. Pearson, supra; See also, Dillon, supra.
Moreover, the jury could, based upon the evidence presented, ascertain that the pain and suffering appellant complained of was due to his prior accidents and related injuries and not from the August 20th accident. Therefore, the damage award for the cost of the emergency room visit would sufficiently compensate appellant for those injuries that the jury felt were a direct result of the said accident. Baum, supra.
Accordingly, the record fails to demonstrate that the trial court abused its discretion in denying appellant's motion for a new trial. Pena, supra. The record illustrates that the jury had before it competent, credible evidence from which to ascertain the damages in the present case. Dillon, supra. Therefore, this court will not invade the province of such a determination and finds appellant's assignment of error to be without merit.Pearson, supra. Thus, the judgment of the trial court is hereby affirmed.
COX, J., VUKOVICH, J., concurs
 ___________________________________ GENE DONOFRIO, JUDGE