MEMORANDUM OF OPINION
Defendant's Motions In Limine A motion in limine is designed to avoid the injection into trial of a potentially prejudicial matter which is not relevant and is inadmissible. Rinehart v. Toledo Blade Co. (1985),21 Ohio App.3d 274, 278. In this case the Defendant asserts that to allow testimony regarding its alleged failure to provide the Plaintiff with an inadequate warning, or its alleged failure to warn the Plaintiff of the Rogozinski System's FDA status, would be irrelevant and prejudicial, as the Defendant was under no duty to provide such warnings directly to the Plaintiff. Based upon the following, this Court finds that such testimony or evidence would be unfairly prejudicially to the Defendant and grants both of Defendant's Motions In Limine.
Defendant's Motion to Exclude Testimony on Alleged Inadequate Warning
The Defendant moves to exclude all testimony regarding the Plaintiff's claim of an alleged inadequate warning of potential medical risks related to her surgeon's use of the Rogozinski Spinal Rod System manufactured by the Defendant. The Defendant bases its motion upon the Ohio Supreme Court's adoption of the learned intermediary doctrine, which establishes that a manufacturer's duty to warn is discharged if the manufacturer adequately warns the physician. Tracey v. Merrell Dow Pharmaceuticals (1991),58 Ohio St.3d 147; Sealey v. G.D. Searle 
Co. (1981), 67 Ohio St.2d 192. Traditionally, this doctrine has been applied to prescription drugs, and the question of whether the doctrine would apply to prescription medical devices appears to be one of first impression in the State of Ohio.
Plaintiff argues the Ohio Products Liability Act, Ohio Revised Code S2307.71, et seq, which applies a form of the learned intermediary doctrine to prescription drugs in S2307.76, yet is silent regarding the application to prescription medical devices, indicates the legislature's intent to exclude prescription medical devices from the application of the learned intermediary doctrine. As further support of this contention, Plaintiff points to the fact that both categories are defined elsewhere in the Code which, it asserts, indicates the intent to apply the doctrine to one category of products and not the other. See Ohio Revised Code S2307.71 (definition of Ethical Drug) and S2307.71(E) (definition of Ethical Medical Device).
While this Court recognizes the classifications, it is also mindful of the Ohio Supreme Court's refusal in Carrel v. Allied Products Corporation (1997), 78 Ohio St.3d 284, 287, to interpret the General Assembly's silence in crafting the Ohio Products Liability Act as indicative of any sort of legislative intent with regard to common-law theories and causes of actions. In that case the Court stated that: the General Assembly will not be presumed to have intended to abrogate a common-law rule unless the language used in the statute clearly shows that intent ; it thus determined that the General Assembly's failure to specifically codify the common-law action of negligent design did not eliminate it. Id. at 287-288. In so ruling, the Carrel Court recognized that the language employed by the Ohio Products Liability Act specifically states that product liability claims (and by necessary implication product liability doctrines and defenses) are only subject to the Ohio Products Liability Act, language which fails to completely eliminate unmentioned common-law theories. Id. Based upon this, the Carrel Court stated that:
 The rule of strict construction refuses to extend the law by implication or inference and recognizes nothing that is not expressed.
 Accordingly, it would be a departure from well-recognized principles of statutory construction to read into a statute words not found in its text. Id.
Utilizing the same analysis this Court similarly finds that the common-law learned intermediary doctrine was not specifically eliminated or modified by the Ohio products Liability Act; it thus remains a viable common-law doctrine whose scope of application must be considered by this Court.
In analyzing whether the learned intermediary doctrine should be extended beyond prescription drugs to encompass prescription medical devices as well, this Court notes that recently, under similar circumstances, Judge David A. Katz of the U.S. District Court for the Northern District of Ohio extended the application of the learned intermediary doctrine to prescription medical devices. Dunlap v. Medtronic, Inc. (N.D.Ohio., Western Div., March 31, 1999), No. 3:97CV7148. While that decision is not binding upon this Court, it does provide persuasive support for this Court's decision that the learned intermediary doctrine is applicable both to prescription medical devices and to prescription drugs.
A review of non-Ohio jurisdictions which have considered this issue reveals that, without exception, every court has extended the doctrine to prescription medical devices as well. See Id.; Mozes v. Medtronic, Inc. (D.Minn. 1998),14 F. Supp.2d 1124; Talley v. Danek Medical, Inc. (E.D.Va. 1998), 7 F. Supp.2d 725; Brayman v. Baxter Healthcare Corp. (2nd Cir. 1993), 984 F.2d 71; Piper v. Bear Medical Sys. (Ariz.App. 1993), 883 P.2d 407; Harwell v. American Medical Systems, Inc. (M.D.Tenn. 1992), 803 F. Supp. 1287; Knowlton v. Deseret Medical Inc. (1st Cir. 1991),930 F.2d 116; Phelps v. Sherwood Medical Indus. (7th Cir. 1987), 836 F.2d 296; Kirsch v. Picker International, Inc. (8th cir. 1985), 753 F.2d 670; Brooks v. Medtronic, Inc. (4th Cir. 1984), 750 F.2d 1227. In each of those cases, the primary issue considered by the courts was whether there was any basis for drawing a distinction between prescription drugs and prescription medical devices. In each instance the court found no compelling reason to draw such distinction and chose to extend the doctrine.
 The Ohio Supreme Court in Tracy v. Merrell Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, determined that The rationale behind [the learned intermediary doctrine] is that the physician stands between the manufacturer and the patient as a learned intermediary. The physician has the duty to know the patient's condition as well as the qualities and characteristics of the drugs or products to be prescribed for the patient's use. The physician is in the best position, therefore, to balance the needs of the patient against the risks and benefits of a particular drug or therapy, and then supervise its use * * *. The learned intermediary doctrine achieves a proper allocation of responsibility since not all patients are alike and it is the physician who best knows the patient. Id. at 149.
Based upon this expressed rationale, this Court similarly can find no compelling reason to limit the application of the learned intermediary doctrine only to prescription drugs. The same policy considerations that serve to protect drug manufacturers are equally applicable to the manufacturers of prescription medical devices. To force the manufacturer of a prescription medical device to track down and warn every patient that is prescribed its device places an unfair burden upon the manufacturer. Just as with the prescription drugs, the learned intermediary doctrine achieves the proper allocation of responsibility when applied to prescription medical devices, since the physician is the individual best suited to balance the needs of the patient against the risks and benefits of a particular drug or therapy, and then supervise its use. Id.
Accordingly, since Dr. Rozen was aware of the inherent medical risks and side-effects of the Rogozinski System, and since the insert provided with each Rogozinski System listed the possible adverse effects (including the pain complained of by Plaintiff), pursuant to the learned intermediary doctrine the Defendant discharged all duties to warn the Plaintiff and similarly situated patients. Since the Defendant was under no duty to personally warn the Plaintiff, any testimony or evidence regarding the Defendant's failure to adequately warn the Plaintiff regarding the potential risks related to Rogozinski System or risks associated with her surgeon's use of the Rogozinski System would be unfairly prejudicial and shall be excluded.
 Defendant's Motion In Limine to Exclude Evidence of Failure to Warn of FDA Regulatory Status
Defendant bases its second motion on the grounds that it had no duty to warn Plaintiff about the FDA regulatory status of the Rogozinski System. The Ohio Supreme Court has already stated that pursuant to the learned intermediary doctrine, the status of the drug with the FDA does not alter the relationship between drug manufacturer, physician, and patient [since] * * * [w]hether the drug is under investigation or FDA approved, it is the physician who selects it as appropriate for the patient. This Court has already ruled that the learned intermediary doctrine is applicable to prescription medical devices; inasmuch as the Defendant provided FDA-approved information concerning the Rogozinski System's FDA regulatory status to Dr. Rozen[3] and Dr. Rozen — in light of such warning — decided to employ an off-label use of the Rogozinski System, any duty which Defendant may have had was discharged. Deposition of Dr. Rozen, attached as Exhibit Q to Defendant's Motion In Limine to Exclude Evidence of Failure to Warn of FDA Regulatory Status.
Ergo, pursuant to the learned intermediary doctrine, any evidence that plaintiff may seek to introduce at trial regarding whether the Defendant had a duty to warn or disclose to the Plaintiff information regarding the FDA regulatory status of the Rogozinski System, or that the manner in which Dr. Rozen chose to use it had not been cleared by the FDA is excluded.
IT IS SO ORDERED.
/S/ Stuart A. Friedman
Judge Stuart A. Friedman
[3] Each Rogozinski System which Dr. Rozen implanted into the Plaintiff was accompanied by a package insert whose language was reviewed and cleared by the FDA prior to distribution by the Defendant. The insert specifically states that "THE USE OF VERTEBRAL PEDICLE SCREW FIXATION IS CONSIDERED INVESTIGATIONAL BY THE U.S. FDA." (Emphasis in original).