OPINION
Respondent/appellee-appellant Ohio Department of Health (hereinafter "ODH") appeals the August 7, 2000 Opinion of the Guernsey County Court of Common Pleas, vacating the March 24, 2000 Order of the Director of Health, which revoked the Radon Mitigation Specialist License of petitioner/appellant-appellee Frank J. Donia (hereinafter "Donia").
 STATEMENT OF THE FACTS AND CASE
On November 1, 1999, Dr. J. Nick Baird, the Director of Health for ODH, sent Donia a certified letter, advising Donia of his intention to propose the revocation of Donia's radon mitigation specialist license due to violations of R.C. Chapter 3723 and O.A.C. Chapter 3701-69. The director based his actions on the following violation:
 The license holder is currently acting as a Radon Mitigation Specialist without approved quality assurance and quality control procedures to assure effective radon mitigation as required in 3701-69-04 (A)(1). The license holder, in a letter dated April 15, 1999, revoked his adoption of the U.S. EPA Radon Mitigation Standards (RMS) which served as the license holder's radon mitigation quality assurance and quality control procedures for his approved application.
Donia's April 15, 1999 letter, to which the director refers, acted as the catalyst for the director's proposal. Specifically, Donia informed ODH:
 I will no longer consider myself obligated to comply with the RMS, nor subject to any program penalty, for any perceived violation, past, present or future, if inspections are conducted, based on this flawed document and rules * * *
April 15, 1999 Donia Letter at 2, unpaginated.
Over the course of the next five months, Donia and ODH corresponded regarding the matter. Mark Needham, Administrator for the Radon Licensee Program, Division of Quality Insurance of ODH, responded:
 It has been determined that an applicants [sic] quality assurance and quality control (QA/QC) procedures for effective radon mitigation must include radon mitigation procedures that are in substantial compliance with the RMS. Therefore, if you revoke your statement that you will follow the RMS from your application you do not meet the criteria for licensure. At this point you must either submit, for inclusion in your QA/QC procedures, radon mitigation procedures that are in substantial compliance with the RMS or readopt the statement that you will follow the RMS.
May 6, 1999 Needham Letter (Emphasis added).
In a correspondence dated September 2, 1999, Donia informed Needham he (Needham) had "misunderstood just what authority the Director of Health has or may give your bureau." Donia explained his revoking the use of the RMS "clearly has nothing to do with O.A.C. 3701-69-03(A)(8) to (A)(11)"; therefore, "[t]he change was not subject to your or the director's approval. [The director's] authority to challenge this change is limited by the last sentence of O.A.C. 3701-69-05(A)(2)." September 2, 1999 Donia Letter at 1, unpaginated. In a letter dated September 28, 1999, Needham informed Donia the director has the authority to determine whether an applicant meets the criteria for a radon mitigation specialist/contractor license according to O.A.C. 3701-69-04(A). Needham continued, "the Director of Health has determined that compliance with radon mitigation standards achieves the appropriate minimum standards for installation ofradon mitigation systems in Ohio." Needham further advised Donia he had "ten business days [to] * * * submit the appropriate documentation that outlines procedures and practices that assures effective radon mitigation." Donia never provided ODH with such documentation. Thereafter, via correspondence dated November 1, 1999, the director informed Donia of the proposed revocation of his license.
Donia filed a timely request for a hearing. The hearing examiner conducted a hearing on January 24, 2000, and subsequently issued a Report and Recommendation, which determined Donia was not in compliance with O.A.C. 3701-69-04(A)(1) and recommended the revocation of his license. Donia filed objections to the Report and Recommendation. After reviewing the record as well as Donia's objections, the director adopted the hearing examiner's Report and Recommendation and revoked Donia's license. The director issued his Adjudication Order on March 24, 2000. Donia filed a timely notice of appeal to the Guernsey County Court of Common Pleas. The trial court issued a briefing schedule. After the parties filed their respective briefs, the trial court rendered an Opinion on August 3, 2000. The trial court concluded the director's Adjudication Order was not in accordance with law, and, as such, the trial court vacated said order and reinstated Donia's license, effective January 6, 2000.
It is from this Opinion ODH appeals, raising the following assignments of error:
 I. THE COMMON PLEAS COURT ERRED BECAUSE IT FAILED TO CONSIDER THE RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE CONTAINED IN THE ADMINISTRATIVE RECORD.
 II. THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW BY ACTING BEYOND ITS AUTHORITY AND REINSTATING AN EXPIRED LICENSE.
 III. THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW BY FAILING TO PROPERLY APPLY OHIO ADMINISTRATIVE CODE 3701-69-04(A)(1).
 IV. THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW BY FAILING TO PROPERLY APPLY OHIO ADMINISTRATION CODE 3701-69-05.
 I, II, III, IV
Because ODH's assignments of error are interrelated, we shall address said assignments of error together. In its first assignment of error, ODH maintains the trial court erred in failing to consider the reliable, probative, and substantial evidence contained in the administrative record. In its second assignment of error, ODH contends the trial court erred in acting beyond its authority by reinstating an expired license. In its third assignment of error, ODH argues the trial court erred in failing to properly apply O.A.C. 3701-69-04(A)(1). In its fourth assignment of error, ODH submits the trial court erred in failing to properly apply O.A.C. 3701-69-05.
The standard of review which the trial court must employ in an appeal from an administrative agency is governed by R.C. 119.12, which states, in pertinent part:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.
The evidence required by R.C. 119.12 has been defined as follows: (1) "reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability the evidence is true; (2) "probative" evidence is evidence which tends to prove the issue in question; it must be relevant in determining the issue; and (3) "substantial" evidence is evidence with some weight; it must have importance and value. Our Place, Inc. v. Ohio Liquor ControlComm'n (1992), 63 Ohio St.3d 570, 571.
"The appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court." Pons v. OhioState Medical Bd. (1993), 66 Ohio St.3d 619, 621. On an appeal pursuant to R.C. 119.12, an appellate court shall review evidentiary issues to determine whether the common pleas court abused its discretion in determining whether or not the agency decision was supported by reliable, probative and substantial evidence. Id. "Abuse of discretion connotes more than an error of law or of judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable."Tracy v. Merrell-Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147,152.
O.A.C. 3701-69-04 provides, in pertinent part:
 (A) After a license or renewal application is completed in accordance with paragraph (F) of rule 3701-69-03 of the Administrative Code, the director shall determine whether the applicant meets the following criteria, as applicable:
 (1) The radiological safety plan, the quality assurance and quality control procedures, and the qualifications of the person requesting licensure and his or her employees are sufficient to protect employees and the public from unnecessary exposure to radiation, to assure accurate radon measurements, and to assure effective radon mitigation * * * (Emphasis added).
Donia completed an application for the renewal of his license on October 29, 1997, which required him to "[a]ttach a description of quality assurance and quality control procedures to be utilized in radon testing and/or mitigation." In response, Donia attached a copy of the EPA's Radon Mitigation Standards, with a signed notation, "Applied Radon, Inc. follows these RMS guidelines." The director approved the renewal of Donia's license, effective January 6, 1998, through January 6, 2000. Subsequently, on April 15, 1999, Donia informed ODH he "no longer considered [himself] obligated to comply with the RMS, nor subject to any program penalty." April 15, 1999 Donia Letter. This letter began a series of correspondences between Donia and ODH, culminating in the director's proposal to revoke Donia's license for failing to submit documentation outlining his procedures and practices to assure effective radon mitigation.
Donia asserts the EPA's Radon Mitigation Standards are merely procedures to assure uniform installation and do not assure accurate radon measurement. During the hearing, Mark Needham, ODH Program Administrator, explained the reason for requiring quality assurance/quality control procedures for radon mitigation:
 Because the quality control/quality assurance procedures is [sic] an application. The only way that we have some assurance that the person who applied may safely and effectively submit — install a radon mitigation system. And it also helps us to ensure to the public that there is a procedure that's followed that will help them to ensure that they get a safe system. And it also provides a level playing field throughout the industry, in that each contractor is installing systems in a similar manner.
Tr. at 87-88.
Donia maintains he submitted a quality assurance and quality control plan for radon testing with his original application in 1992, and those procedures are the procedures he uses to assure effective radon mitigation. See, Tr. at 101-102. Donia explained:
 The way I ensure [sic] effective mitigation is by proving to my clients that they had elevated radon levels and they, no longer have elevated radon levels through quality control — quality controlled and ensured [sic] measurement that proves that. That was on file with my original application.
 * * * the way we established * * * that you confirm radon is controlled is with a radon measurement, not with an RMS."
 Id. at 102, 107.
The testimony continues:
 MR. DONIA: To demonstrate the effectiveness of a radon mitigation system, you must do a quality controlled/quality assured radon measure that demonstrates that levels are now under control.
HEARING OFFICER SHOUB: Right.
 MR. DONIA: A radon mitigation standard does not give you any indication that levels are controlled. By the act of using [the RMS], you cannot give your client any assurance that levels are controlled. The preface of the RMS written by the EPA says as much.
 HEARING OFFICER SHOUB: Are you saying that the RMS is not a QA and QC procedure?
 MR. DONIA: Exactly. What it is, it is a building standard. Building standards are different than quality assurance and quality control.
HEARING OFFICER SHOUB: Building standard meaning what?
 MR. DONIA: Building standard is like electrical codes or plumbing codes. They specify how you install something safely. They don't have anything to do with — sure, there's a relationship to quality assurance, but in the laws that we're talking about here and these rules, quality control and quality assurance were always in the context of radon measurements to assure your clients that your mitigation was effective. The Radon Mitigation Standard did not exist at the time —
 Id. at 116-117.
We appreciate Donia's argument a specific type of system without testing does not demonstrate such system is effective. However, we find the director, pursuant to O.A.C. 3701-69-04(A)(1), is authorized to determine whether an applicant's procedures are sufficient to assure accurate radon measurements and to assure effective radon mitigation. ODH has determined compliance with the RMS, which provides minimum standards for the installation of radon mitigation systems, assures effective radon mitigation. Because we find the record contains reliable, probative, and substantial evidence to support ODH's revocation of Donia's license, we find the trial court abused its discretion in vacating the director's Adjudication Order.
Pursuant to O.A.C. 3701-69-04(D)(2), the director has the authority to suspend, revoke, or refuse to renew the license of a radon mitigation specialist. On review, the trial court must determine whether the decision to revoke the license is supported by reliable, probative, and substantial evidence and is accordance with the law. Our Place, Inc.,supra, at 571. Herein, the trial court reinstated Donia's license, effective January 6, 2000. Having found the trial court abused its discretion in vacating the Adjudication Order, we find the trial court did not have the authority to reinstate Donia's license.
Further, a trial court must accord due deference to an administrative agency's interpretation of relevant statutes and provisions of the Ohio Administrative Code. See, Leon v. Ohio Bd. of Psychology (1992),63 Ohio St.3d 683, 687. Although the trial court herein recognized this duty, it did not accord such deference to ODH.
ODH has interpreted O.A.C. 3701-69-04(A)(1) as requiring an applicant for a radon mitigation specialist license not only have quality assurance/quality control procedures for radon testing/measurement, but also have quality assurance/quality control procedures for radon mitigation. Donia did not have the necessary quality assurance/quality control procedures for radon mitigation. However, the trial court determined Donia's approved quality assurance/quality control procedure for radon measurement satisfied O.A.C. 3701-69-04(A)(1), and ODH could not require additional procedures. We find the trial court abused its discretion in failing to accord due deference to ODH's interpretation this requires QA/QC procedures for both radon measurement and radon mitigation.
O.A.C. 3701-69-05(A)(2) provides:
 (A) A licensed radon tester shall do all of the following:
* * *
 (2) Request, in writing, the director's approval before implementing any change which would render the information submitted under paragraphs (A)(8) to (A)(11) of rule 3701-69-03 of the Administrative Code no longer accurate. If the director fails to send or otherwise communicate disapproval of a proposed change within thirty days after receiving the request for approval, the proposed change is deemed to be approved. The licensee shall notify the director of any other change which would render the information in the application for licensure or renewal no longer accurate, but the director's approval of the change is not required;[1]
The trial court found:
 Ohio Administrative Code 3701-69-05(B) provides that a licensed mitigation specialist shall comply with paragraphs (A)(1) to (A)(4) of this rule. Further, Ohio Administrative Code 3701-69-05(A)(2) provides that requests for "any change which would render the information submitted under paragraphs (A)(8) to (A)(11) of rule 3701-69-03 of the Administrative Code no longer accurate" shall be made in writing for the director's approval before the implementation of any change. Administrative Code 3701-69-05(A)(2) further provides "The license shall notify the director of any change which would render the information in the application for licensure or renewal no longer accurate, but the director's approval of the change is not required."
Opinion at 3.
The trial court concluded Donia did not need the director's approval when he (Donia) revoked his adoption of the RMS as his quality assurance/quality control procedure for radon mitigation because such change is not addressed in O.A.C. 3701-69-05(A)(2). As discussed supra, the RMS provides standards for uniform installation, and such standards result in effective radon mitigation.
The trial court interpreted O.A.C. 3701-69-05(A)(2) without considering O.A.C. 3701-69-04(A)(1), which is set forth supra, and O.A.C. 3701-69-05(A)(1), which provides:
 (A) A licensed radon tester shall do all of the following:
 (1) Operate in strict accordance with his or her approved license application, particularly those portions of the application pertaining to the quality assurance and quality control procedures, the radiological safety practices, and the calibration of instruments;
Reading O.A.C. 3701-69-05(A)(2) in pari materia with O.A.C. 3701-69-04(A)(1) and — 05(A)(1), we find the change initiated by Donia through his April 15, 1999 correspondence required the director's approval as the change resulted in Donia's not operating in strict compliance with his license application. We further find the trial court abused its discretion in failing to accord due deference to ODH's interpretation of these provisions.
Based upon the foregoing, ODH's first, second, third, and fourth assignments are sustained.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Guernsey County Court of Common Pleas is reversed. The March 24, 2000 Order of the Director of Health is hereby reinstated. Costs assessed to petitioner/appellant-appellee.
Hoffman, J. Gwin, P.J. and Boggins, J. concur
[1] O.A.C. 3701-69-03 provides, in pertinent part:
 (A) To apply for a license as a radon mitigation contractor, a person shall submit to the director an application on a form prescribed and provided by the director, which shall include but shall not be limited to the following:
* * *
 (8) Description of the basic quality assurance and quality control procedures that will be utilized for each type of measurement equipment to assure the reliability and validity of radon measurements;
 (9) Description of the radiological safety plan designed to keep each employee's exposure to radon as low as reasonably achievable;
 (10) Description by type, manufacturer, and model number of all instrumentation to be used in radon measurement. If the applicant will use devices requiring non-portable equipment for analysis, the applicant shall list the name and address of the radon laboratory providing the analysis and its approval number issued under division (C) of section 3723.07 of the Revised Code and rule 3701-69-08 of the Administrative Code; and
 (11) Description of frequency and method of calibration of instruments.