OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court, the parties' briefs, and the oral argument before this court. Plaintiffs-Appellants, St. Paul Fire and Marine Insurance Co. and Dr. James Volk, appeal the judgment of the Belmont County Court of Common Pleas denying their motion to vacate summary judgment granted in favor of Defendant-Appellee, George Cholak, M.D. The issues we must decide are whether it was excusable neglect for St. Paul to attach a letter from an expert instead of a properly executed affidavit to its motion for summary judgment and whether St. Paul has provided a meritorious defense to the motion for summary judgment. Although it is questionable whether it was excusable neglect for St. Paul to attach the wrong document to the motion for summary judgment, we cannot say it was an abuse of discretion for the trial court to decide it was not. We further conclude the trial court properly denied the motion to vacate as St. Paul failed to demonstrate the existence of a meritorious defense. Accordingly, the decision of the trial court is affirmed.
 {¶ 2} The underlying lawsuit originated with a previous suit filed in 1998 by Andrew Kazmirski against his optometrist, Dr. Volk, alleging professional negligence. The complaint was based upon Dr. Volk's failure to diagnose a cancerous tumor growing on Kazmirski's optic nerve during the course of an examination in March of 1996. According to Kazmirski, the tumor went untreated until he had effectively lost his sight in both eyes. In October of 1999, St. Paul, Dr. Volk's medical malpractice carrier, entered into a settlement agreement with Kazmirski on behalf of Dr. Volk for $600,000.
 {¶ 3} On March 23, 2001, St. Paul filed suit against Dr. Cholak, the family physician who had treated Kazmirski both before and after Dr. Volk's examination. St. Paul claimed Kazmirski brought his eye complaints to the attention of Dr. Cholak during these visits. However, Dr. Cholak failed to refer Kazmirski to a neurological ophthamologist until it was too late. Because the applicable statute of limitations had run, barring any malpractice claim Kazmirski could have brought against Dr. Cholak, St. Paul is likewise barred from seeking contribution from Dr. Cholak. Thus, St. Paul filed a complaint for indemnification from Dr. Cholak for $600,000.
 {¶ 4} In response, Dr. Cholak moved for summary judgment, asserting St. Paul's claim for indemnity is instead a claim for contribution that was not timely asserted, and further, the claim of indemnity must fail as no "special relationship" existed between the parties. St. Paul opposed the motion for summary judgment, claiming a special relationship existed because both doctors were treating the same patient and because "it was [St. Paul] who ended up having to pay [$600,000] as a result of the negligence of Dr. Cholak." In support of this argument, St. Paul attached a letter drafted by an expert, Dr. Theodore Herwig, which indicated Dr. Cholak had been negligent in failing to timely diagnose Kazmirski's cancerous tumor.
 {¶ 5} In making its ruling, the trial court indicated it could not consider the unsworn letter or arguments based upon the letter since it was not one of the materials specifically provided for in Civ.R. 56. The trial court then announced it would grant summary judgment in favor of Dr. Cholak. Before the judgment entry was filed, St. Paul filed a motion for leave to file an affidavit of their expert and for reconsideration of the earlier ruling. The trial court did not rule on either motion but instead journalized its entry granting summary judgment.
 {¶ 6} Two weeks later, St. Paul filed a motion for relief from judgment pursuant to Civ.R. 60(B), claiming its failure to file a properly executed expert affidavit properly constituted excusable neglect. St. Paul further asserted that, if the affidavit had been filed, it would have provided grounds for proceeding with the claim for indemnification. The trial court denied St. Paul's motion to vacate summary judgment which lead to this timely appeal.
 {¶ 7} As its sole assignment of error, St. Paul asserts:
 {¶ 8} "The trial court erred and abused its discretion by failing to grant plaintiffs' motion for relief from judgment."
 {¶ 9} Motions for relief from judgments are governed by Civ.R. 60(B), which states: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect * * *. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3), not more than one year after the judgment, order or proceeding was entered or taken."
 {¶ 10} To prevail on a Civ.R. 60(B) motion, the movant must demonstrate three factors: (1) a meritorious defense if relief is granted; (2) entitlement to relief under Civ.R. 60(B)(1) through (5); and, (3) that the motion was filed within a reasonable time, the maximum being one year from the date of the judgment entry if relief is sought under Civ.R. 60(B)(1) through (3). GTE Automatic Elec., Inc. v. ARCIndustries, Inc. (1976), 47 Ohio St.2d 146, 150-151, 1 O.O.3d 86,351 N.E.2d 113. These requirements are in the conjunctive and all three factors must be met to fulfill the test. Id. at 151. This court will not disturb a trial court's ruling on a Civ.R. 60(B) motion absent an abuse of discretion. State ex rel. Russo v. Deters (1997), 80 Ohio St.3d 152,153, 684 N.E.2d 1237. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Tracy v. Merrell DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875.
 {¶ 11} Assuming we concluded St. Paul has both timely filed their motion for relief from judgment and demonstrated excusable neglect, St. Paul has not and cannot satisfy the third prong of the test which requires the party demonstrate a meritorious defense. Even if the trial court were to consider the affidavit of the expert, St. Paul's claim for indemnification fails because a special relationship does not exist between Drs. Volk and Cholak.
 {¶ 12} St. Paul argues the affidavit of their expert would be enough to defeat summary judgment as it claims Dr. Cholak was primarily negligent in the treatment of Kazmirski whereas Dr. Volk was only passively negligent. Therefore, indemnification from Dr. Volk would be appropriate regardless of the fact that St. Paul can show no special relationship between the physicians because there exists an implied contract of indemnification between Drs. Cholak and Volk. In support of this contention, St. Paul cites Travelers Indemnity v. Trowbridge
(1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, and GlobeIndemnity Co v. Scmitt (1944) 142 Ohio St. 595, 27 O.O. 525, 53 N.E.2d 790.
 {¶ 13} The rule of indemnity provides that "where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable." Travelers at 14. When a person is secondarily liable due to his relationship to the other party, and is compelled to pay damages to an injured party, he may recoup his loss for the entire amount of damages paid from the one who is actually at fault, and who, in fact, caused the injuries. Globe at 603.
 {¶ 14} An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other. See Losito v. Kruse
(1940), 136 Ohio St. 183, 185, 16 O.O. 185, 24 N.E.2d 705. Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant. Id. at 185-186. Indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence. Globe at 599.
 {¶ 15} The Ohio Supreme Court in Reynolds v. Physicians Ins. Co.of Ohio (1993), 68 Ohio St.3d 14, 623 N.E.2d 30, has more recently addressed whether an implied contract of indemnity exists between two physicians when each physician has distinct and separate duties in caring for a patient. In Reynolds, the insurance company similarly argued its claim was based on an implied contract of indemnity theory. The Ohio Supreme Court found that no relationship existed between the two physicians involved in that case that would give rise to primary and secondary liability.
 {¶ 16} "There are two physicians here with separate and distinct duties. Dr. Mete was responsible for the delivery of infant Reynolds. Dr. Zornow was responsible for providing pediatric care after the birth of the infant. They acted independently of one another and are, therefore, responsible only for the results of their own negligence, if negligent at all. Thus, this is a joint and concurrent tortfeasor situation in which no right of indemnity lies.
 {¶ 17} "Dr. Mete voluntarily entered into a settlement agreement with the Reynoldses based on his belief as to his own liability. Dr. Mete was not legally obligated to enter into that agreement. It would be unjust to demand that an unrelated party, Dr. Zornow, indemnify Dr. Mete for the entire amount of that settlement agreement.
 {¶ 18} "Accordingly, we conclude that in a medical malpractice action against two physicians alleging negligence in the medical care and treatment of a patient, there is no implied contract of indemnity when no relationship existed between the physicians and each had distinct and separate duties in caring for such patient." Reynolds at 16-17.
 {¶ 19} Likewise, in the present case, the two physicians have no connection to each other, except that they happened to treat the same patient. Accordingly, Dr. Cholak moved for summary judgment on that ground asserting the only claim that could have been brought against him under these circumstances would be one for contribution, arguing: 1) the two doctors did not share a practice together; 2) the doctors could not be construed as master and servant; and, 3) each doctor was independently sought out for treatment by Kazmirski. With this motion for summary judgment, Dr. Cholak effectively placed the burden of demonstrating a "special relationship" on St. Paul.
 {¶ 20} In response, St. Paul asserts there was in fact some relationship between the doctors since they were treating the same patient. This argument fails in light of the Ohio Supreme Court's decision in Reynolds. The simultaneous treatment of a patient is simply not enough to show that two doctors were related tortfeasors involved in a "special relationship." If this were in fact the case, we would be left with an absurd result. Essentially, any patient who opted to be treated by numerous physicians could unilaterally bind those physicians to each other by the mere act of seeking out their treatment. Consequently, St. Paul's claim for indemnification fails as a matter of law even if the trial court had permitted St. Paul to file the expert affidavit.
 {¶ 21} Because St. Paul has failed to demonstrate a meritorious defense if relief by the trial court was granted, the trial court did not abuse its discretion by denying St. Paul's motion for relief from judgment. Therefore, Appellant's sole assignment of error is meritless and the decision of the trial court is affirmed.
Judgment affirmed.
Waite, P.J., and Vukovich, J., concur.