JOURNAL ENTRY AND OPINION
I. INTRODUCTION
Plaintiffs-appellants, Ma Louis Vaccarariello, Resha's former spouse, brought this lawsuit seeking damages for injuries allegedly caused by an inadequate warning about the FDA regulatory status of, and the medical risks related to, the use by Resha's surgeon of the Rogozinski Spinal Rod System in her spinal fusion surgery.[1] The Rogozinski System, manufactured by defendant-appellee/cross-appellant, Smith 
Nephew, Inc., f/k/a Smith Nephew Richards, Inc., is an internal spinal fixation device that was affixed by appellant's surgeon, Dr. Michael J. Rozen, to appellant's spine by screws in the vertebral pedicles.
At the time of appellant's surgery in June 1993, appellee was marketing the Rogozinski Vaccariello, n/k/a Mary Resha, and System pursuant to the FDA for another use. The Rogozinski System was not specifically approved for pedicle screw fixation; nonetheless, such off-label use[2] was permissible because Dr. Rozen was utilizing the System in a manner which he felt was in the best interest of his patient.
The record demonstrates that prior to performing the surgery, Dr. Rozen was made aware of the risks and dangers associated with the surgery, including post-operative pain and discomfort, through package inserts included with each of the Rogozinski Systems. The record is also clear that prior to appellant's surgery, Dr. Rozen was aware that the use of pedicle screw fixation was considered investigational by the FDA. Nevertheless, Dr. Rozen determined that installing the Rogozinski System directly into appellant's spine was in her best interests.
Despite the surgery, appellant continued to suffer from increasing pain. On October 29, 1993, while watching an evening news program, appellant learned that the Rogozinski System was alleged to have caused similar problems for other patients. Appellant ordered a transcript of the program, and six days later sought a second medical opinion. On November 10, 1993, appellant was seen by Dr. Alfred Kahn for an evaluation of her back. According to appellant, Dr. Kahn informed her that he believed the metal was causing the majority of [her] problems, and he therefore recommended its removal.
On December 15, 1995, appellant filed this action against multiple manufacturers, subsequently dismissing all of the originally named defendants except appellee after discovering that appellee was the manufacturer of the device installed in her back. Appellant eventually amended her complaint to assert only an inadequate warning claim pursuant to R.C. 2307.76 and a non-conformance with representations claim pursuant to R.C.2307.77 against appellee. The thrust of appellant's case was her allegation that appellee had a duty to inform her and the general public about the FDA regulatory status of the Rogozinski System and that many representations made by appellee to the FDA in connection with its regulatory history were false.
Appellee filed three motions relating to appellant's claims: 1) a motion for summary judgment based on the statute of limitations; 2) a motion in limine to exclude any evidence relating to the alleged inadequacy of appellee's warning of the medical risks of using the Rogozinski System; and 3) a motion in limine to exclude any evidence relating to appellee's alleged failure to warn of the System's FDA regulatory status. Appellee's motions in limine were based upon the proposition that the learned intermediary doctrine, which holds that a manufacturer's duty to warn is discharged if the manufacturer adequately warns the physician, Tracey v. Merrell Dow Pharmaceuticals (1991),58 Ohio St.3d 147; Sealey v. G.D. Searle Co. (1981), 67 Ohio St.2d 192, also applies to prescription medical devices and, because appellee had provided adequate warnings to Dr. Rozen regarding the FDA status of the Rogozinski System and the risks associated with using it in the manner in which he used it in connection with appellant's fusion surgery, appellee was under no duty to provide warnings directly to appellant.
The trial court denied appellee's motion for summary judgment regarding the statute of limitations but granted appellee's motions in limine. Because the trial court's rulings regarding appellee's motions in limine left appellant without sufficient evidence to show there was a genuine issue as to any material fact concerning the claims set forth in her complaint, the trial court subsequently granted appellee's second motion for summary judgment. Appellant appealed the trial court's order granting appellee's second motion for summary judgment and appellee cross-appealed the judgment denying its motion for summary judgment based on the statute of limitations.
For the reasons that follow, we affirm the trial court's judgment granting appellee's second motion for summary judgment and reverse the judgment of the trial court denying appellee's motion for summary judgment based on the statute of limitations.
II. APPELLANT'S ASSIGNMENT OF ERROR
In her single assignment of error, appellant asserts that the trial court erred in granting appellee's motions in limine, and subsequently, its second motion for summary judgment, because the learned intermediary doctrine, which has traditionally been applied only in the context of prescription drugs, does not also apply to prescription medical devices. This appears to be an issue of first impression in the State of Ohio.
We find appellant's arguments to be without merit. Instead, we adopt pages four through eight of the June 4, 1999 Memorandum of Opinion of Judge Stuart A. Friedman, attached hereto as Exhibit A, in which Judge Friedman considered appellant's arguments and set forth a well-reasoned analysis regarding why the learned intermediary doctrine encompasses prescription medical devices.[3]
Moreover, we agree with the trial court that the record reflects that appellee fulfilled its duty to warn appellant's surgeon, Dr. Rozen, regarding the potential medical risks associated with use of the Rogozinski System and provided Dr. Rozen with FDA-approved information concerning the System's FDA regulatory status. Accordingly, pursuant to the learned intermediary doctrine, appellee discharged its duty to warn appellant of possible adverse effects of the Rogozinski System and its FDA status. Consequently, because appellee was under no duty to personally warn appellant, any testimony or evidence regarding appellee's alleged failure to adequately warn appellant of the potential medical risks of the Rogozinski System or its FDA status would have been irrelevant and prejudicial. Therefore, the trial court properly granted appellee's motions in limine and subsequently, its second motion for summary judgment.
Appellant's assignment of error is overruled.
III. APPELLEE'S CROSS-APPEAL
In its cross-appeal, appellee asserts that the trial court erred in denying its motion for summary judgment based on the statute of limitations because appellant's product liability action is time-barred by R.C. 2305.10.
R.C. 2305.10 provides that an action for bodily injury * * * shall be brought within two years after the cause of action accrues. Personal injury claims arising from product liability actions are governed by the two-year statute of limitations set forth in Section 2305.10. Gates v. Precision Post Co. (1996),74 Ohio St.3d 439; McAuliffe v. Western States Import Co. (1995),72 Ohio St.3d 534.
When the injury associated with a defendant's conduct does not manifest itself immediately, the cause of action accrues when the plaintiff knows or, by the exercise of reasonable diligence should have known, that he or she has been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10. O'Stricker v. Jim Walter Corp. (1983),4 Ohio St.3d 84, paragraph two of the syllabus. This rule of accrual is known as the discovery rule.
Appellee contends that under the discovery rule, the statute of limitations began running on October 29, 1993 when appellant viewed the evening news program in which she learned that the device implanted in her back could be the source of her problems. Alternatively, appellee contends that the statute of limitations began running on November 10, 1993, when Dr. Kahn informed appellant that the metal in her back needed to come out and that it was causing the majority of her problems. Appellee asserts that either event was an alerting event that began the running of the statute of limitations and, therefore, appellant's complaint, filed on December 15, 1995, more than two years after either event, was untimely.
Appellant argues, however, and the trial court held, that the two year statute of limitations set forth in R.C. 2305.10 was tolled by the pendency of the class action certification in MDL 1014 (Eastern District of Pennsylvania), a federal class action against pedicle screw manufacturers in which appellee was named as a defendant and appellant was a potential class member. In its Memorandum of Opinion and Order denying appellee's motion for summary judgment, the trial court indicated that the rule tolling the statute of limitations during the period when a plaintiff is an asserted class member:
 stems from the United States Supreme Court opinion in American Pipe Construction Co. v. Utah (1974), 414 U.S. 538, and its subsequent ruling in Crown, Cork Seal Co. v. Parker (1983), 462 U.S. 345, which states that: the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. American Pipe at 554. Accordingly, during the period between when the Motion for Class Certification was filed on April 4, 1994, and when it was denied on February 22, 1995, the statute of limitations as to Plaintiff's Ohio action was tolled. Thus, the additional three hundred and thirteen days which was tacked onto Plaintiff's original two year statute of limitations more than encompasses Plaintiff's December 15, 1995 filing, and Defendant's Motion for Summary Judgment accordingly is denied.
In The Ohio Hospital Assn. v. Armstrong World Industries, Inc. (Apr. 6, 2000) Cuyahoga App. No. 76067, unreported, this court recently addressed the issue raised by appellee, i.e., whether Ohio recognizes a cross-jurisdictional tolling doctrine similar to that recognized in federal courts whereby an applicable statute of limitations period is tolled during the period in which a plaintiff is an asserted member of a class in class action litigation prior to a decision denying class certification. Upon reflection, we held that cross-jurisdictional class action tolling of statutes of limitations is not recognized in Ohio.
Finding the reasoning of the Illinois Supreme Court in Portwood v. Ford Motor Co. (1998), 183 Ill.2d 459, persuasive, we noted that tolling the statute of limitations for individual actions filed after the dismissal of a class action is not sound public policy where both actions are not brought in the same court system:
 The [Portwood] court reasoned that any state which independently adopted a rule of cross-jurisdictional tolling will invite into its courts a disproportionate share of suits which the federal courts have refused to certify as class actions after the statute of limitations has run. Portwood at 465. * * * In the present case, the appellant asks that this court adopt a policy which would not only invite litigants who were unsuccessful in federal court to file suit in Ohio, but, also, litigants from nearly every other state in the nation. This sort of court sanctioned forum shopping would likely result in an influx of cases into this state. This court believes that it is sounder public policy not to expose the Ohio courts to such risks.
 The Portwood decision also recognized the inability of a state court system to regulate or control the proceedings of a foreign jurisdiction. Conceivably a case could languish for years in another state, or in the federal system, before class action status is denied. As stated in Portwood, [s]tate courts should not be required to entertain stale claims simply because the controlling statute of limitations expired while a federal court considered whether to certify a class action.
 By joining other jurisdictions which have declined to recognize cross-jurisdictional class tolling, Ohio also recognizes the potential for abuse whereby any putative plaintiff in any class action around the country could potentially benefit from a toll of the statute of limitations by merely pointing to a class action lawsuit that was pending anywhere in the country during the time in which the statute of limitations was running, whether or not said plaintiff was even aware of the existence of the class action litigation during its pendency. By requiring a plaintiff to pursue his cause of action within the statute of limitations period proscribed by the legislature, or to file a protective action in this state during the pendency of a class action in another jurisdiction, the potential that defendants will be required to defend stale claims where evidence has been lost, memories have faded, and witnesses have disappeared is minimized.
Id.
We agree with appellee, and the trial court, that the statute of limitations began to run on October 29, 1993, the date that appellant viewed the news program which spurred her to order a transcript and begin the process of seeking a legal remedy. See Browning v. Burt (1993), 66 Ohio St.3d 544. Upon viewing the news program, appellant learned that the Rogozinski System was not FDA approved for pedicle screw surgery, may cause more problems than it solves, causes people more discomfort, more disability and more pain, in some cases, patients end up worse after the surgery than before, and that some patients continued to have pain almost a year after the surgery. At that point, appellant had already been experiencing continued, severe pain in her right leg and low back and difficulty with her leg giving out, which she had not experienced prior to the subject fusion surgery. In addition, appellant knew that she now had an abnormal EMG study,[4]
whereas her pre-surgery study was normal. Thus, after watching the news program appellant knew, or should have known, that her alleged injuries (low back pain, leg pain and stumbling) may have been caused by appellee's device. Appellant's argument that she did not discover her cause of action against appellee until the pedicle screws were removed from her spine in July 1998 is therefore without merit.
Accordingly, appellant's complaint — filed December 15, 1995 — is barred by the two year statute of limitations in R.C. 2305.10
and, therefore, the trial court, which did not have the benefit of our opinion when it rendered its decision, erred in denying appellee's motion for summary judgment based on the statute of limitations. The judgment of the trial court denying appellee's motion for summary judgment is therefore reversed.
Appellee/cross-appellant's assignment of error is sustained.
This cause is affirmed in part and reversed in part for further proceedings consistent with the opinion herein.
It is, therefore, ordered that the parties equally share the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
 ____________________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE
JOHN T. PATTON, J. and JAMES D. SWEENEY, J., CONCUR.
[1] Hereafter, all references to appellants will be singular as Louis Vaccariello's claims are merely derivative of those of his former spouse.
[2] Off-label use refers to the use of a lawfully marketed device by a surgeon in a manner which he or she feels is in the best interest of the patient, regardless of whether the use has been identified in FDA-cleared labeling. Such use is not regulated or prohibited by the FDA because it falls within the practice of medicine, which is not subject to FDA regulation. See Weaver v. Reagen (8th Cir. 1989), 886 F.2d 194; U.S. v. Algon Chemical, Inc. (3rd Cir. 1989), 879 F.2d 1154.
[3] Appellant's argument that the trial court's analysis of Carrel v. Allied Products Corp. (1997), 78 Ohio St.3d 284, was incorrect is without merit. Contrary to appellant's contention, the trial court did not erroneously conclude, based upon Carrel, that Ohio recognized the learned intermediary doctrine in the context of prescription medical devices prior to the enactment of the Ohio Products Liability Act. Rather, the trial court concluded that the common law learned intermediary doctrine as applied to prescription drugs was not eliminated or modified by the Ohio Products Liability Act; thus, because it remains a viable doctrine, the trial court could properly consider whether its scope of application extended to prescription medical devices.
[4] EMG stands for electromyogram, which is a type of nerve conduction study.
 EXHIBIT A