584

HOWLAND ET AL., APPELLEES, *v.* PURDUE PHARMA L.P. ET AL., APPELLANTS.
[Cite as *Howland v. Purdue Pharma L.P.*,
104 Ohio St.3d 584, 2004-Ohio-6552.]

(No. 2003–1538—Submitted June 8, 2004—Decided December 15, 2004.)

O'CONNOR, J.

{¶ 1} This is a mass tort case involving the prescription drug OxyContin. The trial court granted a motion for class certification, and the court of appeals affirmed that decision. The parties to the appeal are plaintiffs-appellees, class representatives LaDonna Howland, Ronald Schaffer, Lillian Lakes, Martha Schaffer, and Fred Lakes, and defendants-appellants Purdue Pharma L.P., Purdue Pharma, Inc., Purdue Frederick Company, Purdue Pharmaceuticals L.P., P.F. Laboratories, Inc., and PRA Holdings, Inc. (collectively, "Purdue") and Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott").[1]

{¶ 2} OxyContin, which is manufactured by Purdue, is the trade name for oxycodone hydrochloride controlled-release tablets, an opioid analgesic drug. In 1995, the United States Food and Drug Administration ("FDA") approved OxyContin for the management of moderate to severe pain where use of an opioid analgesic is appropriate for more than a few days.

{¶ 3} Oxycodone is a morphine-like drug that is highly addictive and is rated as a Schedule II narcotic, a designation given by the government that identifies a prescription medication as having a great potential for abuse. A Schedule II designation also means that the drug, while accepted for medical use, has severe restrictions, and abuse of the drug has a high potential to lead to severe psychological or physical dependence.

{¶ 4} OxyContin is a patented timed-release formula that releases the narcotic incrementally over 12 hours. This formulation distinguishes OxyContin from short-acting medications that must be taken more frequently. Because of the timed-release formulation, OxyContin contains more oxycodone than short-acting opioids.

{¶ 5} Shortly after its introduction, OxyContin became Purdue's best selling and most profitable product, with sales in 2001 of $1.4 billion. A co-promotion

---

1. Several other parties were named as defendants, but they are not parties to this appeal.

agreement between Purdue and Abbott provided for the sharing of promotion obligations and the payment by Purdue to Abbott of a commission on net sales.

{¶ 6} While OxyContin quickly became a highly prescribed drug, public concerns arose regarding its safety. On May 11, 2000, Purdue received a letter from the FDA warning Purdue to cease the use of an advertisement for OxyContin that recommended using the drug to treat arthritis patients without first trying milder drugs. The United States Drug Enforcement Agency ("DEA") also recognized problems associated with OxyContin, and reports linking OxyContin to various deaths and addiction problems began surfacing. According to the DEA, as of December 2001, 117 people had died from OxyContin in 31 states. On July 25, 2001, the FDA ordered Purdue to issue a "black box warning," the strongest warning for an FDA-approved drug, on all OxyContin labels. The warning would call attention to the drug's potential for misuse, abuse, and diversion and limit the class of patients for whom OxyContin is appropriate.

{¶ 7} In this case, Howland was prescribed OxyContin for nearly one year to treat pain stemming from injuries she suffered in a 1999 automobile accident. Howland alleges an OxyContin dependency, addiction, and withdrawal that led to her losing her job, suffering physical and mental injuries, and being convicted of a crime. Ronald Schaffer was prescribed OxyContin for approximately two years following his heart surgery in 1998. He alleges that he suffered from drug dependence as well as other adverse consequences as a result of taking OxyContin. Lillian Lakes took OxyContin for six months after her mastectomy in November 1999. She alleges drug dependence and other adverse consequences, including hospitalization. Martha Schaffer and Fred Lakes allege loss-of-support and loss-of-consortium claims.

{¶ 8} Appellees initiated this action on behalf of all individuals who have been detrimentally affected by OxyContin and who meet the criteria for three subclasses for which they seek certification. These subclasses are:

{¶ 9} Class I: "All persons in the State of Ohio that were prescribed OxyContin and thereafter suffered, and/or continue to suffer, the effects of the drug such as the risk of drug dependency, addiction, actual addiction, and the consequences of addiction."

{¶ 10} Class II: "All persons in the State of Ohio that were prescribed OxyContin and thereafter suffered, and/or continue to suffer, the effects of the drug such as physical, mental, and/or emotional harm, death and/or loss of consortium, as a result of the use of OxyContin."

{¶ 11} Class III: "All persons in the State of Ohio that suffered, and/or continue to suffer, the effects of the drug such as physical, mental, and/or emotional harm, death and/or loss of consortium, as a result of the use and abuse of OxyContin by others."

{¶ 12} Appellees' claims center on appellants' allegedly tortious conduct in the manufacturing, marketing, promotion, selling, and distribution of OxyContin in disregard for the health and safety of appellees and others. They assert claims of negligence, failure to warn, and breach of express and implied warranties. Generally, appellees allege that they and hundreds of other Ohioans have sustained physical, mental, and economic harm through dependence on or addiction to OxyContin as a result of negligence and misrepresentation in the manufacture and aggressive marketing of the product. Appellees also claim that the drug companies failed to disclose to patients and doctors the risk for abuse and addiction associated with OxyContin.

{¶ 13} Some of the specific allegations are that widespread abuse of OxyContin has occurred because the existing formulation does not contain an "antagonistic drug" to prevent a person from destroying the controlled release feature of the tablet by crushing or dissolving it. Crushing or dissolving the tablet permits immediate administration of the total 12-hour dose, which results in a sudden and intense high similar to that caused by heroin. Appellees also assert that Purdue failed to produce tablets in a dosage small enough to permit a physician to safely prescribe OxyContin to an "opioid-naïve" patient, i.e., a patient who has never taken an opioid.

{¶ 14} In addition, appellees claim that OxyContin's enormous sales volume was due primarily to appellants' highly coercive and seductive sales tactics that influenced the prescription, distribution, and consumption of OxyContin. These tactics allegedly included paying transportation and hotel costs for doctors to attend meetings about pain management where they could be recruited and paid fees to recruit other doctors to prescribe OxyContin; telling pharmacists that their failure to fill prescriptions, even because of suspected abuse, might harm the patient; and aggressively promoting the drug directly to consumers. Appellees also allege that appellants misrepresented OxyContin as safe and appropriate for the treatment of all kinds of pain, including back pain, pain from osteoarthritis, and short-term pain.

{¶ 15} After conducting an evidentiary hearing on appellees' Civ.R. 23 motion to certify a class action and reviewing the submitted pleadings, briefs, and other documents, the Butler County Court of Common Pleas certified the class as requested pursuant to Civ.R. 23(B)(3). The court held that a class action offers the benefit of resolving the common questions regarding appellants' alleged misconduct before the need arises to delve into the individual questions of each class member. The court stated that answers to common questions will not vary among the class members and concluded that if appellees cannot prove that appellants are negligent, did not fail to provide warning, and did not breach any express or implied warranties, the cause of action will end.

{¶ 16} The Twelfth District Court of Appeals affirmed.[2] The cause is now before the court upon the acceptance of a discretionary appeal.

{¶ 17} We are asked to determine whether the trial court abused its discretion in certifying a statewide class of individuals asserting injuries allegedly arising from use of the painkiller OxyContin. Because we determine that the trial court abused its discretion in certifying the class, we reverse the appellate court's decision.

{¶ 18} Civ.R. 23(A) specifies four prerequisites to a class action: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Two other requirements are implicit: The class must be identifiable, and the representatives must be members of the class. *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 96, 521 N.E.2d 1091.

{¶ 19} In addition to these threshold requirements, parties seeking class certification must show that the action is maintainable under one of the grounds contained in Civ.R. 23(B). Id. at 94, 521 N.E.2d 1091. In the case at bar, appellees claim that they satisfy the Civ.R. 23(B)(3) requirements that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The test for commonality under Civ.R. 23(A) is typically met without difficulty. Id. at 97, 521 N.E.2d 1091. We have held, however, that to establish commonality predominance for purposes of Civ.R. 23(B)(3), "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 313, 15 OBR 439, 473 N.E.2d 822.

{¶ 20} Indeed, in *Wilson v. Brush Wellman, Inc.*, 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, we upheld the trial court's determination that the proposed class met the commonality requirement in Civ.R. 23(A), though it failed to satisfy the predominance requirement in Civ.R. 23(B)(3).[3] The trial court in

---

2. The affirmance directed the trial court to restrict class membership to Ohio residents who initially secured OxyContin through lawful means. A divided appellate court reversed class certification against an individual defendant-appellant, Timothy Smith, D.O. This latter determination was not appealed.

3. The appellate court reversed the trial court's decision but in doing so examined only Civ.R. 23(B)(2). We reversed the judgment of the appellate court, reinstating the trial court's decision that the plaintiffs could not be certified under either Civ.R. 23(B)(1), (2), or (3).

*Wilson* went "into much detail in its Civ.R. 23(B)(3) predominance analysis, citing multiple individual questions of fact requiring examination for different plaintiffs within the proposed class." Id. at ¶ 29. We held that we could not find an abuse of discretion by the trial court given such a detailed and thoughtful analysis. Id. at ¶ 30.

{¶ 21} In the case at bar, however, the trial court failed to analyze or even mention any of the specific problems argued by the appellants. Instead, the only reference to appellants' position was: "Specifically, the Defendants contend the issues in mass product liability claims differ dramatically from individual to individual concerning damages, liability and defenses." The court went on to summarily conclude, "As stated above, this Court has found there are common questions relating to the Defendants' alleged wrongful conduct. Further, we believe that these common questions predominate over individual questions."

{¶ 22} Federal courts, considering similar suits against these appellants, have demonstrated appropriate consideration of appellants' arguments.[4] In *Wethington v. Purdue Pharma L.P.* (S.D.Ohio 2003), 218 F.R.D. 577, 581, plaintiffs sought certification of "[a]ll Ohio, Kentucky, Indiana, and West Virginia residents who first used OxyContin after receiving a legal prescription between the years 1995 and the date of class certification. The class also includes those individuals who have loss of consortium claims."[5] The court recounted each party's arguments in detail before concluding that each of the plaintiffs' claims for negligence, failure to warn, manufacturing defect, negligence per se, conspiracy, breach of warranty, fraud, and other statutory claims "depended on questions of fact and law peculiar to each individual so that there was not sufficient commonality for a class to be certified." Id. at 588. The court noted that addiction to the drug is an individualized question of fact. Id. Further, the "key distinction" found by the court was that "regardless of any alleged improper marketing, in order to obtain the product, a class member must make a request to a Learned Intermediary." Id. at 589. The court held that "doctors were adequately warned of the powerful dosage of OxyContin relative to morphine, and thus the Learned Intermediary Doctrine discharges the duty to warn from the manufacturer to the physician.

{¶ 23} "Liability, in this case, therefore, turns on individual determinations." Id.

---

4. The courts in the following cases held that plaintiffs in each case failed to meet even the commonality requirement of Fed.R.Civ.P. 23(a)(2). *Wethington v. Purdue Pharma L.P.* (S.D.Ohio 2003), 218 F.R.D. 577, 588; *Harris v. Purdue Pharma, L.P.* (S.D.Ohio 2003), 218 F.R.D. 590, 596–597; *Foister v. Purdue Pharma L.P.* (Feb. 26, 2002), E.D.Ky. No. Civ. A. 01–268–DCR, 2002 WL 1008608, at * 7–8.

5. The proposed class was similar to those in the case at bar, yet broader because the class description in *Wethington* did not speak to "suffering" as in this case.

{¶ 24} The learned-intermediary doctrine has been adopted and applied by this court. See *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 569 N.E.2d 875. The doctrine is an exception to the rule that a manufacturer has a duty to warn the ultimate consumer. It precludes manufacturer liability for failure to warn the consumer when an adequate warning has been given to a "learned intermediary," e.g., the consumer's physician. *Seley v. G.D. Searle & Co.* (1981), 67 Ohio St.2d 192, 203, 21 O.O.3d 121, 423 N.E.2d 831. We find the *Wethington* decision well reasoned and persuasive. Yet neither the trial court nor the appellate court examined the doctrine's applicability. Because an almost identical suit from the Southern District of Ohio had already been resolved based on this doctrine, the analysis should not have been disregarded.

{¶ 25} We have stated, "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus. "However, the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442.

{¶ 26} An abuse of discretion is "more than a mere error of law or judgment, instead requiring a finding that the trial court's decision is unreasonable, arbitrary, or unconscionable." *Wilson v. Brush Wellman, Inc.* 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, ¶ 30, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. "[W]here the trial court completely misconstrues the letter and spirit of the law, it is clear that the court has been unreasonable and has abused its discretion." *Warner v. Waste Mgt.*, 36 Ohio St.3d at 99, 521 N.E.2d 1091, fn. 10. A trial court that dispenses with a party's arguments in such a fashion, fails to examine a well-established doctrine, and ignores nearly identical federal proceedings does not merely misconstrue the letter and spirit of the law—it ignores them. For the foregoing reasons, we reverse the judgment of the appellate court upholding class certification.

Judgment reversed.

CHRISTLEY, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., dissents.

F.E. SWEENEY and PFEIFER, JJ., dissent.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for RESNICK, J.

---

**MOYER, C.J., dissenting.**

{¶ 27} In my view, the trial court's decision was not unreasonable, arbitrary, or unconscionable and did not constitute an abuse of discretion. Had the trial court denied class certification rather than granting it in the case at bar, I would uphold that action as well. I believe that either decision would fall within the scope of a sound exercise of discretion.

{¶ 28} As observed by the majority, this court recently upheld a trial court's decision to exercise its discretion in *refusing* to certify a class. *Wilson v. Brush Wellman, Inc.*, 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59. My positions in both cases are wholly consistent: in neither case is it our role to review class certification questions de novo.

{¶ 29} The majority observes that federal district courts in Ohio and Kentucky have refused to certify class actions in similar cases against these appellants based upon actions in regard to the drug OxyContin. While this may be accurate, I find it of minimal value in evaluating the sole question before us today, i.e., did the trial court abuse its discretion in ruling otherwise. Moreover, I note that the Sixth Circuit recently reiterated its standard of review when reviewing district court class certification decisions as follows: " 'The district court's decision *certifying* the class is subject to a "very limited" review and will be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion." ' *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir.2001) (citations omitted) (emphasis added). 'Abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." ' *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir.2002) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir.1996))." *Olden v. LaFarge Corp.* (C.A.6, 2004), 383 F.3d 495, 507.

{¶ 30} In *Olden*, the court did not find an abuse of discretion in the certification of a class action and expressed its confidence that "the district court will take appropriate measures if, at any time, it appears that the class threatens to become unmanageable." Id. at 512. I am unconvinced that federal law as interpreted by the Sixth Circuit supports the majority's action today.

{¶ 31} In my view, the express language of Civ.R. 23(C)(4)(a) authorizes the trial court to conduct this case as a class action for the determination of the appellants' liability. That rule provides, "When appropriate (a) an action may be brought or maintained as a class action with respect to particular issues, or (b) a

class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." In *Olden*, the defendant in a class action argued, as do the appellants in the case at bar, that individual issues relating to establishing causation and damages would overwhelm the case. Id. at 508. Citing Fed.R.Civ.P. 23(C)(4)(A), the Sixth Circuit observed, however, that "individual *damage* determinations might be necessary, but the plaintiffs have raised common allegations which would likely allow the court to determine liability (including causation) for the class as a whole. * * * Whether the defendant's negligence caused *some* increased health risk and even whether it tended to cause the class minor medical issues can likely be determined for the entire class." (Emphasis sic.) Id. The court quoted *Simon v. Philip Morris, Inc.* (E.D.N.Y.2001), 200 F.R.D. 21, 30, for the proposition that " '[b]y bifurcating issues like general liability or general causation and damages, a court can await the outcome of a prior liability trial before deciding how to provide relief to the individual class members.' " Id. at 509.

{¶ 32} I agree with the majority that the learned-intermediary doctrine is a well-established doctrine precluding manufacturer liability for failure to warn the consumer when an adequate warning of the risks of ethical drugs has been given to the patient's physician. The appellant drug manufacturer may assert this doctrine as a defense to failure-to-warn claims made by patients who were prescribed OxyContin. The fact that a potential defense exists to one type of claim presented in an action, however, does not justify the conclusion that a trial court abuses its discretion in certifying a class action.

{¶ 33} Finally, the majority concludes that the trial court abused its discretion by failing to provide an adequate explanation or analysis of the reasons for its decision. I do not agree with the majority's inference that the trial court "completely misconstrue[d] the letter and spirit of the law" by failing to examine the merits of a learned-intermediary defense and deciding differently from several federal courts in arguably similar cases. I would not require trial courts to make specific written findings and conclusions in every class-certification decision in the absence of a statute or procedural rule mandating it. Moreover, even if the majority believes that the trial court's decision should be reversed based on an absence of a full and complete explanation of its reasoning, the correct disposition of the case before us would be to remand the cause to provide the trial court an opportunity to correct its deficiency. I would not resolve the substantive merits of the class certification issue based on a procedural failure not of the parties, but of the trial court itself.

{¶ 34} I would affirm the judgment of the court of appeals, thereby allowing this case to proceed in the trial court as a class action.

FRANCIS E. SWEENEY, SR., J., dissenting.

{¶ 35} I respectfully dissent. In this case, our power of review is limited: we must only decide whether the trial court abused its discretion in creating a statewide class action on behalf of individuals asserting injuries allegedly arising from use of the painkiller OxyContin. *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 483, 727 N.E.2d 1265.

{¶ 36} The basis for an abuse-of-discretion standard is the trial court's special expertise and familiarity with case-management problems and inherent power to manage its own docket. *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442. Any doubts that a trial court may have as to whether the elements of class certification have been met should be resolved in favor of upholding the class. *Baughman,* 88 Ohio St.3d at 487, 727 N.E.2d 1265. A reviewing court must affirm class certification unless the court finds that the trial court "completely misconstrues the letter and spirit of the law." *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 99, 521 N.E.2d 1091, fn. 10. Finally, we must keep in mind the remedial purpose of Civ.R. 23. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 236, 12 OBR 313, 466 N.E.2d 875.

{¶ 37} Although the majority gives lip service to the appropriate standard of review, it loses its way when it summarily analyzes Civ.R. 23 and relevant case law. In addition, it unnecessarily relies upon nonbinding federal authority to support its decision. For the following reasons, I believe that the trial court did not abuse its discretion in certifying the class. I would affirm the court of appeals' decision that affirmed the trial court's finding.

{¶ 38} Civ.R. 23 governs class actions. This rule of procedure was designed to conserve " 'the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion.' " (Bracketed material sic.) *Gen. Tel. Co. of Southwest v. Falcon* (1982), 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740, quoting *Califano v. Yamasaki* (1979), 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176. Civ.R. 23(A) provides:

{¶ 39} "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

{¶ 40} In addition to the threshold requirements, parties seeking class certification must show that the action is maintainable under one of the grounds contained in Civ.R. 23(B). *Warner,* 36 Ohio St.3d at 94, 521 N.E.2d 1091. The majority correctly notes that this case involves Civ.R. 23(B)(3): "questions of law

or fact common to the members of the class predominate over any questions affecting only individual members, and * * * a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

{¶ 41} According to the 1966 Advisory Committee Notes to Fed.R.Civ.P. 23(b)(3) [which is identical to Ohio's Civ.R. 23(B)(3)], Rule 23(b)(3) may be utilized when:

{¶ 42} "[C]lass-action treatment is not as clearly called for as [with subdivisions (b)(1) or (b)(2)], but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."

{¶ 43} Thus, Civ.R. 23(B)(3) is "the most ' "adventuresome" ' " of the categories of class action, and it applies to cases that involve a mix of common and individual issues. Jon Romberg, Half a Loaf is Predominant and Superior to None: Class Certification of Particular Issues under Rule 23(c)(4)(A), 2002 Utah L.Rev. 249, 261, quoting *Amchem Prods., Inc. v. Windsor* (1997), 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689, and Benjamin Kaplan, A Prefatory Note (1969), 10 B.C.Indus. & Com.L.Rev. 497.

{¶ 44} The trial court found that appellees established Civ.R. 23(B)(3)'s requirement that common questions must predominate. The test for commonality under Civ.R. 23(A) is not demanding. See *In re Disposable Contact Lens Antitrust Litigation* (M.D.Fla.1996), 170 F.R.D. 524, 532. However, we have held that to establish commonality predominance for purposes of Civ.R. 23(B)(3), "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 313, 15 OBR 439, 473 N.E.2d 822.

{¶ 45} " '[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.' " *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 429–430, 696 N.E.2d 1001, quoting *Lockwood Motors, Inc. v. Gen. Motors Corp.* (D.Minn.1995), 162 F.R.D. 569, 580.

{¶ 46} In finding commonality, the trial court stated:

{¶ 47} "Although each of the Plaintiffs and the proposed class members have different stories to tell concerning how OxyContin became a part of their lives, a commonality arises from the Plaintiffs' allegations concerning the Defendants' wrongful conduct. There are numerous common questions of law and fact

including whether Defendants promoted, marketed, sold or distributed OxyContin in a negligent manner, whether Defendants knew or should have known of the harmful effects of their promotion, marketing, sale and distribution of OxyContin, whether Defendants are liable for manufacturing and designing a defective product, and whether Defendants knowingly concealed or suppressed material facts from Plaintiff[s] and class members about the nature and qualities of OxyContin."[6]

{¶ 48} The trial court then concluded that these common questions predominated:

{¶ 49} "As stated above, this Court has found there are common questions relating to the Defendants' alleged wrongful conduct. Further, we believe that these common questions predominate over individual questions."

{¶ 50} In finding that the trial court abused its discretion in reaching this conclusion, the majority relies upon decisions from several federal district courts. These decisions have refused to certify a class action against Purdue and Abbott. However, unlike the majority, I do not give these decisions much weight. These are trial court decisions where the courts were faced with the initial determination whether to certify the class. Again, our review as an appellate court is limited: we must decide only whether the trial court abused its discretion. That this is our focus is not in dispute. Moreover, all these authorities recognize that the trial court has broad discretion to determine whether class certification is appropriate. See, e.g., *Foister v. Purdue Pharma L.P.* (Feb. 26, 2002), E.D.Ky. No. Civ. A. 01–268–DCR, 2002 WL 1008608.

{¶ 51} Instead of relying upon decisions from other jurisdictions, I find our cases of *Cope, Hamilton,* and *Baughman* controlling. All these cases establish that the trial court commits error if it denies victims of common conduct the right to prosecute the litigation as a class action. *Cope,* 82 Ohio St.3d at 430, 696 N.E.2d 1001, quoting 1966 Advisory Committee Notes to Fed.R.Civ.P. 23(b)(3); *Hamilton,* 82 Ohio St.3d at 86, 694 N.E.2d 442; *Baughman,* 88 Ohio St.3d at 490,

---

6. Although not at issue here, the trial court also found that a class action was superior to other methods of resolving the controversy. Specifically, the court reasoned: "Class action treatment would eliminate any potential danger of varying or inconsistent judgments, while providing a forum for the vindication of rights of groups of people who individually would be without effective strength to litigate their claims. * * * A class action offers the benefit of resolving the common questions concerning Defendants' alleged misconduct before the need to delve into the individual questions of each class member. The answers to these common questions will not vary from class member to class member. If it is found that the Defendants were not negligent, did not fail to provide warning, and/or did not breach any express or implied warranties, the case, or [at] least that cause of action, would end. To force the Plaintiffs and class members to pursue the Defendants individually would give the Defendants an insurmountable advantage, force the court to hear repetitive evidence and redundant arguments and result in increased costs to litigants."

727 N.E.2d 1265. Moreover, in these cases, we noted that "a wide variety of claims may be established by common proof in cases involving similar form documents or the use of standardized procedures and practices." *Cope,* 82 Ohio St.3d at 430, 696 N.E.2d 1001; *Hamilton,* 82 Ohio St.3d at 80, 694 N.E.2d 442; *Baughman,* 88 Ohio St.3d at 489–490, 727 N.E.2d 1265. Also, these cases reiterate that whether a trial court should certify a class is a decision within the trial court's discretion. See, e.g., *Hamilton,* 82 Ohio St.3d at 70, 694 N.E.2d 442.

{¶ 52} I readily acknowledge that there are individual questions to be resolved. These questions include individual issues of damages, medical histories, dosage, length of time using the drug, etc. However, Civ.R. 23(C)(4)(a) addresses this problem. Civ.R. 23(C)(4)(a) directs that, when appropriate, "an action may be brought or maintained as a class action with respect to particular issues." Cases certified under Subdivision (C)(4)(a) proceed in multiple stages. First, issues common to the entire class, i.e., the allegations of defective design, misleading advertising, irresponsible promotion, and misrepresentation, are resolved collectively. If appellants prevail, the case would be over. If appellees prevail, remaining individual issues such as each doctor's role in prescribing OxyContin and each patient's damages would be resolved in separate stages of this lawsuit, or even in subsequent lawsuits. See Romberg, 2002 Utah L.Rev. at 262. On this point, I find our comments in *Hamilton,* 82 Ohio St.3d at 85, 694 N.E.2d 442, particularly germane:

{¶ 53} "It is conceivable that a significant amount of time may be spent in this case litigating questions affecting only individual members of the classes. However, clockwatching is neither helpful nor desirable in determining the propriety of class certification. * * * A court should not 'determine predominance by comparing the time that the common issues can be anticipated to consume in the litigation to the time that individual issues will require. Otherwise, only the most complex common questions could predominate since such issues tend to require more time to litigate than less complex issues.'" Id., quoting 5 Moore's Federal Practice (3 Ed.1997) 23–207 to 23–208, Section 23.46[1].

{¶ 54} Finally, I would reject Abbott's argument that its limited role in the sale, marketing, and promotion of OxyContin to medical specialists requires us to find that the trial court abused its discretion in certifying the class action against it. This argument ignores that the trial court may not engage in a merits determination regarding the extent of Abbott's role. This is an issue that must be developed at trial and decided by the trier of fact. *Cope,* 82 Ohio St.3d at 438, 696 N.E.2d 1001. At this stage of the litigation, the record is sufficient to permit the trial court to find that appellees presented a colorable claim against Abbott. For instance, Abbott agreed to the use of its name and logo alongside Purdue's name and logo in materials promoting OxyContin, thereby lending its name and

prestige to Purdue and encouraging physicians to assume that Abbott endorsed the use of OxyContin. Also, there is evidence supporting appellees' claim that Abbott assumed an important role by securing the approval of hospitals to include OxyContin in their formularies. Accordingly, I would find that the trial court had a reasonable basis for finding that Abbott's conduct generally affected all members of the class.

{¶ 55} There is no doubt that this will not be an easy case to try. Yet, whether we would have certified a class action in the first instance is not a question before us. Instead, as a reviewing court, our role is limited: we need only decide whether the trial court abused its discretion. In this regard, I cannot find that the trial court's certification "completely misconstrues the letter and spirit of the law." *Warner*, supra, 36 Ohio St.3d at 99, 521 N.E.2d 1091, fn. 10. I would affirm the judgment of the court of appeals.

PFEIFER, J., concurs in the foregoing dissenting opinion.

---

Vorys, Sater, Seymour & Pease, L.L.P., David S. Cupps, Daniel J. Buckley and Phillip J. Smith; Chadbourne & Parke, L.L.P., Donald I. Strauber, Mary T. Yelenick, Phoebe A. Wilkinson and Gretchen N. Werwaiss, for appellant Purdue.

Ulmer & Berne, L.L.P., and Joseph P. Thomas; Venable, L.L.P., Paul F. Strain and M. King Hill III, for appellant Abbott.

Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Terrence L. Goodman, Louise M. Roselle, Renee A. Infante and Paul M. De Marco; Law Office of Scott J. Frederick, L.L.C., Scott J. Frederick and Patrick Garretson; Gardner, Ewing & Souza, C. David Ewing and Damon B. Willis; David L. Helmers & Assoc. and David L. Helmers; Gallion, Baker & Bray and William Joseph Gallion; Frankovitch, Anetakis, Colantonio & Simon and Carl Frankovitch; Shirley Allen Cunningham Jr., for appellees.

Bricker & Eckler, L.L.P., Kurtis A. Tunnell and Anne Marie Sferra, urging reversal for amicus curiae Ohio Manufacturers' Association.

Paul A. Franz, urging reversal for amicus curiae Procter & Gamble Company.

Legal Consulting Services, Inc. and Elisa P. Pizzino; Daniel J. Popeo and Richard A. Samp, urging reversal for amicus curiae Washington Legal Foundation.

Bricker & Eckler, L.L.P., and Drew H. Campbell; Covington & Burling and David H. Remes, urging reversal for amicus curiae Pharmaceutical Research and Manufacturers of America.

Lane, Alton & Horst, L.L.C., Jeffrey J. Jurca and Beth Anne Lashuk; Pain Law Initiative and Mary E. Baluss, urging reversal for amici curiae American

Pain Foundation, National Foundation for the Treatment of Pain, and Ohio Pain Initiative.

O'Melveny & Myers, L.L.P., John H. Beisner, Stephen J. Harburg and Morgen A. Sullivan, urging reversal for amicus curiae Product Liability Advisory Council, Inc.