[Cite as *Brady v. Haines*, 2021-Ohio-4565.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MARION COUNTY


JUDITH R. BRADY, AS TRUSTEE
OF THE BRADY FAMILY REVOCABLE      CASE NO. 9-21-09
LIVING TRUST, DATED APRIL 27, 2016,

      PLAINTIFF-APPELLANT,

      v.

JAMIE L. HAINES & MECHELE R. HAINES,      O P I N I O N

      DEFENDANTS-APPELLEES.


Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 19 CV 187

**Judgment Affirmed**

**Date of Decision:  December 27, 2021**


APPEARANCES:

    *Todd A. Anderson* **for Appellant**

    *Donald K. Wick* **for Appellees**

**WILLAMOWSKI, P.J.**

{¶1} Plaintiff-appellant Judith R. Brady, as Trustee of the Brady Family Revocable Living Trust dated April 27, 2016 ("Brady") brings this appeal from the judgment of the Court of Common Pleas of Marion County denying her request for an injunction and awarding damages to the trust. On appeal, Brady claims that the trial court erred by denying the injunction requiring defendants-appellees Jamie L. Haines and Mechele R. Haines (collectively known as "the Haines") to remove the garage encroachment. For the reasons set forth below, the judgment is affirmed.

{¶2} This case arises out of the construction of a building in 2010 and the installation of a concrete driveway in 2016. Brady owns undeveloped agricultural real property that is next to real property owned by the Haines. In 2010, the Haines sought a zoning variance to allow them to construct a garage closer to the property line than the township's required five foot set-back. The Township Board granted the variance upon motion "to approve placement of a 24x30 accessory building with foundation at least 2' away from the north property line." Ex. 1. The variance required that the zoning inspector verify that the foundation was at least 2'away from the north property line. Ex. 1. Bradford Brady, who owned the adjacent property to the north at that time was present at the zoning board's meeting and indicated that he had no problem with the variance being granted. Ex. 1. Jamie Haines used the stakes placed on the property line from a prior survey and ran string between them to mark the property line and the placement of the building. Tr. 139.

Both Bradford Brady and the zoning inspector observed the placement and the zoning inspector approved the construction in 2010. Tr. 139. No concerns were ever raised outside of one vague Facebook comment several years later. Tr. 140.

{¶3} In 2016, the Haines added a concrete drive to the building. The driveway was placed on top of the gravel driveway that had previously been in place for years and was known to abut Brady's property. As there is no setback requirement for driveways, this was not an issue. Tr. 15. After Bradford's death in 2015, Brady decided to reestablish the fence line between the properties and had a survey conducted by Steven Fox ("Fox") in 2018. Tr. 27, 111. Fox testified that the survey showed the corner of the building encroached across the property line by 0.1' for a distance of 0.51' with the overhang. Tr. 32. The actual foundation encroached across the property line by 1.25". Tr. 33. At the most extreme point, the overhang encroached on the property by 12", but tapered down to no encroachment due to the angles. Tr. 44.



{¶4} The survey also showed that in addition to a lead pipe that was found to mark the property line, an iron pin from another survey was found 1.35' from the actual property line. Tr. 30, Ex. 7. Fox indicated that this second pin was likely placed in error and could be partially responsible for the problems. Tr. 30-32, 46. When questioned by the trial court, Fox testified that in that area, an acre of land was selling between $6,000 and $8,000. Tr. 46.

{¶5} As Brady was installing a fence, a dispute arose about where the property line actually was. Tr. 113, 145. The Haines contacted an attorney who sent a letter to Brady. Brady then contacted her attorney. On March 12, 2019, Brady filed a complaint alleging 1) violation of the zoning code, 2) trespass, and 3) obstruction of line fence work. Doc. 1. Brady sought an injunction to remediate the improper encroachment, damages for trespass, court costs, and attorney fees. Doc. 1. The Haines filed an answer to the complaint denying the violations and setting forth various defenses.[1] Doc. 6.

{¶6} On December 3, 2020, the parties entered into a partial stipulation that the building was in violation of the zoning code and that the building and driveway had encroached onto Brady's land. Doc. 54. A bench trial was held before the magistrate on that same day. Doc. 57. The magistrate acknowledged the stipulation as to liability and noted that the only issue before it was damages. Tr. 5-7. At the

---

[1] The Haines filed a cross-complaint alleging that the surveyor who conducted the 2005 survey upon which they relied had failed to follow industry standards, but the cross-complaint was dismissed on summary judgment based upon the statute of limitations and a lack of privity. Doc. 19, 39.

trial, Brady asked the trial court to grant the injunction and order the Haines to move the driveway and the building and to award attorney fees. Tr. 116-120. Jamie Haines testified that Exhibit A showed the prospective cost of moving the building to be approximately $24,200.00. Tr. 148. He asked the trial court to allow the Haines to purchase the land upon which they were encroaching rather than move the building. Tr. 148.

{¶7} Following the trial, the magistrate issued a thorough decision setting forth the following relevant findings of fact.

> **The encroachment of the building and overhang was about 1 ft. onto the Plaintiff's property. Including the setback on the Defendant's property, this was a 3 ft. violation of the variance granted. This encroachment formed a right triangle with the property line/setback line. The base of the encroachment was 5.5 feet. * * ***
>
> **Using basic geometry within common knowledge, the final side of the triangle is about 4.6 feet, and the area of the encroachment by the building is <u>6.9 square feet</u>, given the Plaintiff are given [sic] the benefit of the two foot setback on land belonging to the Defendants. (Area of a triangle = ½ * base (3) * height (4.6) = Area (6.9 sq. ft.)).**

Doc. 57 at 3. The magistrate estimated, based upon the testimony of Fox, that the encroachment by the driveway was at most 6 2/3 square feet. *Id.* The magistrate also found that the errant pin found in Fox's survey created the dispute and the inaccurate measurements. *Id.* at 4. The magistrate conducted a sight view. *Id.* at 5. Based upon that information and the testimony, the magistrate found that "[t]here was no credible testimony that the encroachments of [the Haines] actually impeded

or preclud[ed] any staging or farming activities of [Brady]." *Id*. The magistrate then made the following findings regarding the building.

> **First, this was an accidental encroachment. Although there was lengthy testimony and debate over the incorrect pin that the Defendants used to build the garage and driveway, there was nothing established beyond the unintentional use of the wrong pin that was within a couple of feet of the correct pin, on asymmetric lots.**
>
> **There was no evidence presented that there was bad faith, recklessness, or an intentional act in the inadvertent use of the wrong boundary. Even the Plaintiff ultimately used an imprecise GIS photograph as Exhibit 4 to show the encroachment. If it were bad faith or recklessness to use an incorrect pin, close to the correct pin, and use that in good faith, then Exhibit 4 would not have been appropriate to consider at the trial. * * * If the Court gives the Defendants the same consideration the Plaintiff has given herself, the Court can only find the error by the Defendant to be in good faith, but ultimately incorrect.**

*Id*. at 9-10. The magistrate noted that although Brady alleged that the encroachment made a significant limitation on the ability to farm the property, the evidence did not support a conclusion other than the effect was de minimus having "no practical effect" on the ability to farm the land. *Id*. at 10. The magistrate found the cost of moving the building to be $24,200, as was shown by the estimate presented by the Haines. *Id*. Using an excessive value of the property of $20,000 an acre, the cost to Brady for the encroachment was a mere $3.17. *Id*. at 11. After evaluating all of the evidence and the applicable case law, the magistrate awarded damages to Brady at $3.17 for the encroachment of the building and granted an easement for the

minimal encroachment and $3.07 for the encroachment of the driveway and ordered the encroaching part of the driveway to be removed. *Id*. at 15-16.

{¶8} On December 22, 2020, Brady filed objections to the decision of the magistrate. Doc. 62. Brady objected to the magistrate's denial of the injunction, claiming that the findings of fact and conclusions of law reached by the magistrate were in error. *Id*. The Haines filed a response to the objections on February 26, 2021. Doc. 68. On March 3, 2021, the trial court adopted the magistrate's decision, overruling the objections of Brady. Doc. 69. Brady appeals from this judgment. Doc. 70. On appeal, Brady raises the following assignment of error.

> **The trial court erred as a matter of law and abused its discretion in refusing to grant an injunction requiring [the Haines] to remove the garage encroachment.**

{¶9} The sole assignment of error alleges that the trial court erred in denying the injunction requiring the Haines to move the garage. Although an injunction is a proper remedy for a landowner to use to compel an adjoining landowner to remove an encroachment, the granting of an injunction is within the sound discretion of the trial court. *Garcia v. Gilette*, 11ᵗʰ Dist. Ashtabula No. 2013-A-0015, 2014-Ohio-1868, ¶ 28 citing *Varwig v. Cleveland, C.C. & St. L.R. Co.*, 54 Ohio St. 455, 44 N.E. 92 (1896).

> **Most jurisdictions permit a court to balance the relative hardships to the parties in devising an appropriate equitable remedy. These jurisdictions hold that where the expense and difficulty of removal of an encroachment would be great and the encroachment was causing minimal damage to the plaintiff, or its**

> **removal would result in little benefit to him, a mandatory injunction is not required.**

*Id*. See also Annotation, *Mandatory Injunction to Compel Removal of Encroachments by Adjoining Landowners,* 28 A.L.R.2d 679 and *Old Mill Village Homeowners Assn. v. Bacik*, 9th Dist. Medina No. 2118, 1993 WL 27416 (Feb. 3, 1993). Since the decision whether to grant an injunction is within the discretion of the trial court, it will not be reversed on appeal absent a showing that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Howland v. Purdue Pharma L.P.*, 104 Ohio St.3d 584, 2004-Ohio-6552, ¶ 26, 821 N.E.2d 141.

{¶10} Brady argues that the injunction should have been granted because the Haines were reckless or negligent in the placement of the building by not having a survey done before building. Brady relies upon the holding in *Bethel v. Haney*, 5th Dist. Tuscarawas No. 2006 AP 110065, 2007-Ohio-6452. In *Bethel*, the court reversed the judgment of the trial court denying an injunction and ordered the encroachment to be removed, even though the cost of doing so was much higher than the economic damages to the landowner. A review of this case shows that it is not as dispositive as Brady would like. Brady argues that it stands for the proposition that an injunction cannot be denied if the encroacher took a calculated risk, acted in bad faith, acted negligently or acted indifferently when placing the encroaching structure. While *Bethel* does contain a sentence stating such, it is one of several factors to be considered. *Id*. at ¶ 31. In *Bethel*, the Court determined that

the evidence showed that any encroachment was not intentional and used a balancing test. *Id*. at ¶ 33-34. The holding in *Bethel* was based upon the fact that the appellate court determined that the injunction would not create an "enormous disparity in resulting hardship" and thus determined that the landowner would be irreversibly harmed by denying the injunction. *Id*. at 34.

**{¶11}** The majority of courts, including *Bethel*, apply a balancing test when reviewing the denial or granting of an injunction.

> **The extraordinary nature of the remedy by injunction calls for a particular application of equitable principles, and it may be said to be the duty of the court to consider and weigh the relative conveniences and comparative injuries to the parties which would result from the granting or refusal of injunctive relief. Because of the drastic character of mandatory injunctions, such rules apply with special force to them.**
>
> **When the court is thus asked to undo something that has been done, it must, for obvious reasons, act in a careful and conservative manner and grant the relief only in situations which so clearly call for it as to make its refusal work a real and serious hardship and injustice.**
>
> **The facts which will warrant mandatory relief must be clear, be free from reasonable doubt, and disclose the prospect of irreparable injury to the complainant. Equity will not interfere where the anticipated injury is doubtful or speculative; reasonable probability of irreparable injury must be shown. Such relief will be refused where the injury is so slight as to bring the case within the maxim "de minimis non curat lex," where there is no appreciable damage, where a mandatory decree would require a difficult and expensive act, or where its enforcement would necessitate close and continuous supervision by the court for an indefinite period. As in other cases of injunction, the court will balance the equities between the parties and consider the benefit**

**to the plaintiff of a mandatory writ as against the inconvenience and damage to the defendant, and award relief accordingly.**

**\* \* \***

**In *Arnold v. Melani* (1969), 75 Wash.2d 143, 449 P.2d 800, the Supreme Court of Washington upheld the denial of a mandatory injunction for the removal of an encroaching structure on the property of a neighboring landowner. The court stated at 152-152, 449 P.2d at 806:**

**"As thus construed, \* \* \* *Peoples Sav. Bank v. Bufford* [ (1916), 90 Wash. 204, 155 P. 1068], *supra*, and *Tyree v. Gosa* [ (1941), 11 Wash.2d 572, 119 P.2d 926], *supra*, support the premise that a mandatory injunction can be withheld as oppressive when, as here, it appears (and we particularly stress), that: (1) The encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.**

*Miller v. W. Carrollton*, 91 Ohio App.3d 291, 296-97, 632 N.E.2d 582 (2d Dist 1993).

{¶12} In *Old Mill Village Homeowners Association v. Bacik*, *supra*, the Ninth District Court of Appeals addressed an issue similar to the one before us. In *Bacik,* the Baciks built a deck that encroached upon the Association's property by approximately nine inches and landscaping that encroached approximately 13 feet onto the Association's property. The Association asked the Baciks to remove the encroachments and when they refused, the Association filed a complaint for an

injunction. The trial court eventually denied the motion for the injunction and instead ordered the Baciks to pay damages in to the amount of $500 and granted the Bacik's a permanent easement in the disputed property. The Association appealed claiming the trial court erred by failing to grant the injunction. On appeal, the Court determined that although the trial court abused its discretion by not granting the injunction regarding the landscaping, it did not do so in regards to the deck.

> **A distinction must be made in this case between the nine inch encroachment caused by the deck and the thirteen foot encroachment caused by railroad ties and additional landscaping. We find that the trial court did not abuse its discretion in denying an injunction with regards to the nine inch encroachment of the deck. Bacik had permission from the Association to build the deck. While there is no evidence that the plans submitted for approval disclosed the encroachment, there is also no evidence that the encroachment was caused in bad faith. There was evidence presented that moving the deck back 9 inches would be expensive. Furthermore, the Association's damages due to the nine inch encroachment were minimal, as the property in question was used only as a drainage ditch. In weighing the relative hardships to the parties with respect to the nine inch encroachment, and considering that $500.00 was ordered paid to the Association as compensation, we find no abuse of discretion with regards to denying an injunction for this encroachment.**

*Id*. at *2. The Court also held that the trial court did not abuse its discretion by granting a permanent easement.

{¶13} Here, the trial court reviewed the testimony and exhibits and determined that the encroachment by the garage and the driveway were not intentional or reckless. The trial court determined that the encroachment was caused by a prior survey mistake. The testimony was that there were stakes placed that

were thought by all involved, including Bradford Brady, to mark the property line. Timothy Mooney, a trustee for Claridon Township, testified that at the hearing on the variance, Bradford Brady indicated he supported the variance. Tr. 17. Exhibit 1 showed that the foundation was required to be two foot from the property line and that the township zoning inspector had to inspect it for compliance. Jaime Haines testified that he thought he was in compliance because he ran string between the stakes he believed to be the property markers. Tr. 139. He also used string to mark the layout of the garage. Tr. 139. The placement was reviewed by both Bradford and the zoning inspector, who checked to make sure he was in compliance with the variance. Tr. 139. No objections were raised at that time. Tr. 139. Additionally, Steven Fox ("Fox"), the surveyor for Brady, testified that there was an incorrect pin set at the back corner of the property and he marked such on Exhibit 7. Tr. 28-32. Fox also testified that the incorrect pin could be a cause of the problem. Tr. 46. The determination of the trial court was supported by competent, credible evidence, therefore this court will defer to the trial court's factual finding that the Haines acted unintentionally and in good faith.

{¶14} "In cases where the encroachment was not intentional, courts will balance the equities of the parties, weighing the relative conveniences and comparative injuries to each party that would result from granting or refusing to grant injunctive relief." *Collier v. Dorcik*, 9th Dist. Medina No. 3009-M, 2000 WL 1751301, *3 (Nov. 29, 2000). Such a consideration occurred in this case. The trial

court noted in its judgment entry that the cost of removing the encroachment, as shown by Exhibit A, would be $24,200. Although Brady claims that this amount was speculative, Brady did not present any evidence contrary to it and the trial court was free to determine it was a credible estimate. In contrast, Brady argued that not granting the injunction would harm the ability to continue farming the land. The trial court found this to be lacking in credibility. This Court agrees. The encroachment of the garage by a little over one foot (the amount the 12" overhang would be on Brady's property since the foundation encroached by 1") is rather minimal. Brady's son testified that the land in question is approximately 80' wide and is used to stage farming equipment. Tr. 52-56. The equipment is brought in folded up and is unfolded after it goes through a 40' gate, which is located after the encroachment. Tr. 56-59. The trial court noted that the 6.9 square foot encroachment (including the portion of the garage on the Haines' property but within the setback) "had a de minimis effect on the staging area, and had no effect on the 40 ft. gate area where equipment would enter the property. There was no practical effect on the Plaintiff's ability to farm the land or any portion of the connected farms." Doc. 69 at 14. This finding by the trial court is not only supported by the testimony presented by Brady herself, but also by looking at the history. The garage was built in 2010. The land was continuously farmed without any complaints or issues for several years. No testimony was presented that the property was not currently being farmed. Exhibit 7 shows exactly how much

encroachment exists in relation to the property as a whole. Based upon the record before this court, the trial court did not abuse its discretion in determining that the damage to Brady was slight and the benefit to Brady would gain by granting the injunction was also slight.

{¶15} The trial court next looked at the effect on the use of the property if the encroachment remained. Brady testified that she had no interest in selling the property at any price and intended to farm it. Tr. 108. The trial court determined that the encroachment had no effect on the use of the land as a staging area. Doc. 69 at 15. The trial court determined that even if Brady wished to put a structure on the property, the minimal encroachment would not interfere with her ability to do so. Doc. 69 at 15. The trial court also determined that it was impractical to move the garage and that there would be enormous disparity in resulting hardships. Even using a figure of $20,000, more than double the market rate for farmland in the area, the amount of loss suffered by Brady for the encroachment, including the amount in the setback, was $3.17. Doc. 69 at 16. The cost of moving the building was $24,200 per the itemized estimate provided to the trial court and the testimony of Jaime Haines. All of the findings of fact and conclusions of law made by the trial court were supported by evidence in the record and are not unreasonable, arbitrary, or unconscionable. Thus, the judgment of the trial court was not an abuse of discretion. The assignment of error is overruled.

{¶16} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Marion County is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**